RICHARD STETTINE, Individually and on Behalf of All Taxpayers Similarly Situated, Respondent, v COUNTY OF SUFFOLK et al., Appellants.

Second Department, December 17, 1984

APPEARANCES OF COUNSEL

*Reisman, Peirez & Reisman* (*Robert M. Calica* of counsel), for county appellants.

*Roemer & Featherstonhaugh, P. C.* (*Michael J. Smith* and *William M. Wallens* of counsel), for Suffolk County Chapter of the Civil Service Employees Association, appellant.

*Rebore & Thorpe, P. C.* (*William J. Pisarello* of counsel), for respondent.

## OPINION OF THE COURT

MOLLEN, P. J.

In this declaratory judgment action, we are called upon to determine the validity of a collective bargaining agreement between the County of Suffolk and the Suffolk County Chapter of the Civil Service Employees Association. Special Term in essence declared that, pursuant to sections 801 and 804 of the General Municipal Law, the agreement was invalid because a county representative, who participated in the negotiations and was a signatory in his representative capacity, had a prohibited interest in the agreement. We disagree with Special Term, and therefore reverse.

The material facts are not in dispute. The Suffolk County Chapter of the Civil Service Employees Association (CSEA) is an unincorporated association organized and existing under the laws of the State of New York, and the constitution and by-laws of the Civil Service Employees Association, Inc. (CSEA, Inc.). It is also an employee organization as defined by subdivision 5 of section 201 of the Civil Service Law. CSEA represents approximately 6,500 Suffolk County employees, most of whom are

included in two bargaining units, one "white collar", the other "blue collar".

During 1981, the County of Suffolk and CSEA were parties to a one-year collective bargaining agreement which expired on December 31, 1981. Negotiations for a successor agreement began on March 8, 1982. After 15 sessions were held without agreement, CSEA declared an impasse on June 30, 1982. After three more unsuccessful sessions, the parties attempted to reach agreement by mediation. The parties met with a Public Employment Relations Board mediator on October 4, 5, and 13, respectively, but still no agreement was reached.

Mediation proved to be unsuccessful, and the parties proceeded to the fact-finding stage of the dispute resolution process set forth in section 209 of the Civil Service Law. Three fact-finding sessions were held during November, 1982. Prior to the issuance of a report by the fact finder, the parties held another negotiating session, lasting some 16 hours. This marathon session, which began on December 15, 1982, culminated in the signing, on December 16, 1982, of a memorandum of agreement. Charles Novo, Jr., the President of CSEA, signed on behalf of the union, and Jack Farnetti, who represented the county during the course of the negotiations, signed on behalf of the county. The memorandum of agreement was expressly made subject to review by counsel for the respective parties, and ratification by the CSEA membership and negotiating team, the Labor Relations Counsel, Suffolk County Executive, and the Suffolk County Legislature.

On February 22, 1983, the County Legislature passed a resolution authorizing the County Executive to execute an agreement with CSEA for the fiscal years 1982 to 1985, in accordance with the terms of the memorandum of agreement. The resolution was approved by the County Executive on February 28, 1983, and the agreement was ratified by the CSEA membership. The resulting collective bargaining agreement covered the period from January 1, 1982 to December 31, 1985. Implementation of its salary provisions commenced in March, 1983.

The plaintiff Richard Stettine, individually and on behalf of all taxpayers similarly situated, commenced this action in August, 1983, for a judgment declaring the collective bargaining agreement between Suffolk County and CSEA null and void under sections 801 and 804 of the General Municipal Law, since Jack Farnetti, the Director of Personnel and Labor Relations for Suffolk County, had the power or duty to negotiate, prepare, authorize and/or approve the collective bargaining agreement

while he allegedly had a prohibited interest in that agreement. The alleged interest was a consequence of the passage of Local Laws, 1982, No. 4 of Suffolk County by the Suffolk County Legislature on January 26, 1982. This legislation prospectively granted to exempt county employees, including Jack Farnetti, the same salary adjustments as those which union members would receive under the new collective bargaining agreement which was to be negotiated. Named in the action as defendants were the County of Suffolk, Peter Cohalan, Suffolk County Executive, Jean Tuthill, Treasurer of Suffolk County, the Suffolk County Legislature, Jack Farnetti, Director of Personnel and Labor Relations for Suffolk County, and, Charles Novo, Jr., as President of CSEA. CSEA is also a party to this action pursuant to CPLR 1025 and section 13 of the General Associations Law.

After service of the answer and amended answer, the plaintiff moved for summary judgment (see CPLR 3212). The defendants cross-moved for the same relief. By order dated March 12, 1984, Special Term, *inter alia,* granted summary judgment to the plaintiff, declared null and void the collective bargaining agreement between the County of Suffolk and CSEA, and enjoined compliance with the agreement to the extent that it was not substantially similar to the collective bargaining agreement it was intended to replace. The defendants' cross motions for summary judgment were denied.

On this appeal, the defendants, in substance, collectively argue, *inter alia,* that: (1) the provisions of sections 801 and 804 of the General Municipal Law are not applicable to this case since a collective bargaining agreement is not a contract within the meaning of sections 800 and 801 of the General Municipal Law; (2) Jack Farnetti did not have an interest in the contract, but even if he did, his interest was not a prohibited one; (3) the CSEA is a voluntary nonprofit association and as such is exempted under section 802 (subd 1, par f) from the application of article 18 of the General Municipal Law; and (4) the action was either commenced after the expiration of the applicable Statute of Limitations or is barred by the doctrine of laches.

■ At the outset, we disagree with the defendants' contention that the appropriate vehicle for reviewing the validity of the collective bargaining agreement was a special proceeding instituted pursuant to either CPLR article 4 or CPLR article 78, rather than a declaratory judgment action (see CPLR 3001, 3017, subd [b]), and that, consequently, the four-month Statute of Limitations for proceedings against a body or officer should

have been applied (see CPLR 217). The issue of whether or not a contract has been made in violation of article 18 of the General Municipal Law may properly be raised in a declaratory judgment action (see *New York Public Interest Research Groups v Levitt*, 62 AD2d 1074, app dsmd 46 NY2d 849; *Matter of Reese v Lombard*, 47 AD2d 327, 329; *Matter of Kraemer v Office of Employee Relations*, 63 Misc 2d 708, 709). Because the substance of the claim underlying the declaratory judgment action at bar (see *Solnick v Whalen*, 49 NY2d 224, 229-230) arises out of sections 801 and 804 of the General Municipal Law, Special Term properly applied the three-year Statute of Limitations governing statutory causes of action (see CPLR 214, subd 2).

The memorandum of agreement was signed on December 16, 1982, and was ratified and approved in February, 1983. The plaintiff commenced this taxpayers' action by service of summons and complaint upon CSEA on August 22, 1983. Thus, the action is not barred by the three-year Statute of Limitations. Nor do the circumstances of this case warrant application of the doctrine of laches, the essential element of which is delay prejudicial to the opposing party (see *Matter of Barabash*, 31 NY2d 76, 81; *Weiss v Mayflower Doughnut Corp.*, 1 NY2d 310, 318).

Turning to the merits, in 1964, article 18 of the General Municipal Law (Conflicts of Interest of Municipal Officers and Employees, General Municipal Law, § 800 *et seq.*) was enacted to "provide * * * a clearer standard to guide local officials against conflicts of interest in their business and professional dealings' with their municipalities" (Memorandum of Governor Rockefeller, 1964 McKinney's Session Laws of NY, p 1971; see *Landau v Percacciolo*, 66 AD2d 80, 84-85, affd 50 NY2d 430). As such, the legislation, "has a trinity of purposes: to protect the public from municipal contracts influenced by avaricious officers, to protect innocent public officers from unwarranted assaults on their integrity and to encourage each community to adopt an appropriate code of ethics to supplement this chapter. The Legislature declares that each purpose is a matter of State concern and adopts the following chapter accordingly, with the intention that it shall be the generic law in relation to conflicts of interest in municipal transactions, not to be superseded by local law of any municipality subject to its provisions" (L 1964, ch 946, § 1).

Article 18 was derived from and replaced several other statutory provisions relating to conflicts of interest in local government (e.g., County Law, former § 412; Education Law, former § 1617; General Municipal Law, former § 88; Local Finance Law,

former § 60.20; former Social Welfare Law, §§ 147, 186a-186c; Town Law, former § 104; Town Law, § 176, former subd 31; Village Law, former § 128, subd 5; former § 332). Moreover, section 3 of the General City Law and section 19 of the Second Class Cities Law were amended by deleting the references in those sections to the conflicts of interest of certain municipal officers or employees. In short, the enactment of article 18 of the General Municipal Law "address[ed] directly and in one place the problems arising from conflicts of interest of municipal officers" (*Landau v Percacciolo*, 66 AD2d 80, 85, *supra*).

Section 801 of article 18 of the General Municipal Law, which spells out the "[c]onflicts of interest prohibited", provides in relevant part that "no municipal officer or employee shall have an interest in any contract with the municipality of which he is an officer or employee, when such officer or employee, individually or as a member of a board, has the power or duty to * * * negotiate, prepare, authorize or approve the contract or authorize or approve payment thereunder". Subdivision 1 of section 803 of the statute requires "[a]ny municipal officer or employee who has * * * an interest in any actual or proposed contract with the municipality of which he is an officer or employee, [to] publicly disclose the nature and extent of such interest in writing to the governing body thereof * * * [and] [s]uch written disclosure shall be made part of and set forth in the official record of the proceedings of such body". The statute defines an "interest" as "a direct or indirect pecuniary or material benefit accruing to a municipal officer or employee as the result of a contract with the municipality which such officer or employee serves" (General Municipal Law, § 800, subd 3). Section 804 provides that "[a]ny contract willfully entered into by or with a municipality in which there is an interest prohibited by this article shall be null, void and wholly unenforceable". Finally, the provisions of section 801 do not apply to "[a] contract with a membership corporation or other voluntary non-profit corporation or association" (General Municipal Law, § 802, subd 1, par f).

Jack Farnetti, the Director of Personnel and Labor Relations for Suffolk County, was the county's chief negotiator of the collective bargaining agreement, and his signature appears on the memorandum of agreement opposite the signature of the president of CSEA. Thus, there can be no serious dispute that Farnetti was a municipal officer or employee who had the power or duty to negotiate and prepare the collective bargaining agreement (see General Municipal Law, § 801, subd [1], par [a]). It is also clear that, as a consequence of the passage of Local Laws,

1982, No. 4 of Suffolk County on January 26, 1982, Farnetti had an "interest" in the collective bargaining agreement and that his interest existed when he had the power or duty to negotiate the agreement.[1]

■ Notwithstanding Farnetti's interest, the county defendants argue in substance that the sole benefit passing to Farnetti under the agreement falls within the limitation set forth in section 801, viz., that "[t]he provisions of this section shall in no event be construed to preclude the payment of lawful compensation and necessary expenses of any municipal officer or employee in one or more positions of public employment, the holding of which is not prohibited by law". We agree that the salary adjustments extended to Farnetti pursuant to Local Laws, 1982, No. 4 were that species of interest exempted from the statute (cf. 24 Opns St Comp, 1968, p 61).[2]

Even if Farnetti's interest were not exempted by section 801, his interest, nevertheless, would not be encompassed within the sweep of that section because collective bargaining agreements, such as the one in the case at bar, entered into in accordance with the Taylor Law (Civil Service Law, art 14), simply are not the kind of agreements which article 18 of the General Municipal Law was intended to cover. Our review of the legislative history and the underlying purposes of article 18 quoted above (p 113), persuades us that the statute was designed to insure honesty and candor in business dealings between a municipality and third parties or officers and employees who, for the purpose of the particular transaction, are acting as third parties in the provision of goods or services to the municipality; the statute was not intended to encompass the situation presented here in which a municipality collectively bargains through its officers or employees concerning matters which fall within the ordinary scope of their employment with the municipality (see 24 Opns St

---

1. The subsequent amendment and partial repeal of Local Laws, 1982, No. 4 of Suffolk County by Local Laws, 1983, No. 4 of Suffolk County approved on February 28, 1983, does not affect our finding that Farnetti had an interest in the collective bargaining agreement when he had the power or duty to negotiate it.

2. Our holding is limited to the case where, as here, the interested municipal officer or employee has the power or duty to negotiate, prepare, authorize or approve a contract involving salary for the same office or position from which the power or authority is derived. We intimate no view as to the applicability of the statute to the case where the interested municipal officer or employee holds a second office or position of employment, and he has the power or duty in his first capacity to negotiate, prepare, authorize or approve a contract involving his salary for the second office or position (see *Matter of Dykeman v Symonds,* 54 AD2d 159; 1975 Opns Atty Gen 108).

Comp, 1968, p 61; cf. *Landau v Percacciolo,* 66 AD2d 80, 88, *supra*). In a similar vein, the Court of Appeals construing the conflict of interest provisions in the Second Class Cities Law (former § 19)[3] and the General City Law (former § 3),[4] both of which sections antedated and were replaced by article 18 of the General Municipal Law, stated: "[I]t is inconceivable that the Legislature intended these statutes to embrace labor negotiations or agreements. If the statutes were so construed, any officer or employee of the city (§ 19) who belonged to an organization such as the Teachers' Union of the City of New York, the Transit Workers' Union, the Police and Fire Department Associations, the Civil Service Employees' Association, or any kindred organization, would be subject to discharge if the business agent of his organization asked the city for an increase in salary or wage schedules or other benefits" (*Matter of De Perno v Dulan,* 9 NY2d 433, 437).

Similarly, the State Comptroller first examined the question, he took the position that a collective bargaining agreement is not a "contract" as defined in subdivision 2 of section 800 of the General Municipal Law (see 24 Opns St Comp, 1968, p 60; 24 Opns St Comp, 1968, p 521).[5] Currently, however, the State

---

**3.** Former section 19 of the Second Class Cities Law provided, in pertinent part:

"§ 19. Restrictions; officers not to be interested in contracts * * *

"No member of the common council or other officer or employee of the city, or person receiving a salary or compensation from funds appropriated by the city, shall be interested directly or indirectly in any contract to which the city is a party, either as principal, surety or otherwise; nor shall any such member of the common council, city officer or employee or person, or his partner, or any agent, servant, or employee of such officer, employee or person or of the firm of which he is a partner, purchase from or sell to the city, or any officer thereof, any real or personal property for the use of the city, or any board or officer thereof, nor shall he be interested, directly or indirectly, in any work to be performed for, or services rendered to or for it, or in any sale to or from said city, or to any officer, board or person in its behalf. Any contract made in violation of any of these provisions shall be void. A person shall not be deemed to be interested in a contract, purchase or sale made by a corporation with, from or to the city solely by reason of the fact that he is a stockholder or director of such corporation".

**4.** Former section 3 of the General City Law provided, in pertinent part: "City officers not to be interested in contracts * * *

"[N]or shall the mayor or any alderman, school commissioner or other public officer of any city be directly or indirectly interested either as principal, surety or in any other manner, in any contract, lease, concession or other agreement in which the city is a party".

**5.** Subdivision 2 of section 800 of the General Municipal Law provides: "2. 'Contract' means any claim, account or demand against or agreement with a municipality, express or implied, and shall include the designation of a depository of public funds and the designation of a newspaper, including but

Comptroller is of the view that a collective bargaining agreement between a municipal body and a union is a contract within the meaning of subdivision 2 of section 800 (see 1983 Opns St Comp No. 82-122, p 154; 1981 Opns St Comp No. 81-415, p 462).

Looking to the "'total character of the arrangement'" (see *Matter of Citiwide News v New York City Tr. Auth.,* 62 NY2d 464, 472, quoting from *Matter of Exley v Village of Endicott,* 51 NY2d 426, 432), we conclude that the agreement between the county and CSEA, an unincorporated, voluntary association which is tax exempt (see *infra,* pp 118-120), and which has as its primary purpose the improvement of the terms and conditions of employment of the public employees who make up its membership (see Civil Service Law, § 201, subd 5) is not a contract within the meaning of subdivision 2 of section 800 of the General Municipal Law. Accordingly, we adopt the position taken by the State Comptroller in the earlier opinions (see 24 Opns St Comp, 1968, p 60; 24 Opns St Comp, 1968, p 521).

▮Although Farnetti did not have a prohibited interest in the agreement, he did have a statutory interest which had to be disclosed under section 803 of the General Municipal Law (see *Landau v Percacciolo,* 50 NY2d 430, 434-436, *supra;* 29 Opns St Comp, 1973, p 10). The statute requires that the officer or employee publicly disclose the nature and extent of such interest in writing to the governing body of the municipality (General Municipal Law, § 803, subd 1; see 29 Opns St Comp, 1973, p 118; 20 Opns St Comp, 1964, p 455).

There is no indication in the record in this case that Farnetti made written disclosure of his interest to the County Legislature. Nevertheless, under the facts of this case, Farnetti's interest was adequately disclosed. The interest was created by the Legislature when it passed Local Laws, 1982, No. 4 of Suffolk County. Farnetti's role in negotiating the agreement between the county and CSEA was publicly known. During the months of January and February, 1983, immediately preceding the ratification and approval of the agreement, articles appeared in local newspapers discussing the tie between raises for bargaining unit employees and exempt employees of the county, and referring to Jack Farnetti's interest as well as his role in negotiating the agreement. At no time was Farnetti's interest concealed (cf. *Landau v Percacciolo,* 66 AD2d 80, affd 50 NY2d 430, *supra*). The County Executive and the County Legislature knew of

not limited to an official newspaper, for the publication of any notice, resolution, ordinance, or other proceeding where such publication is required or authorized by law".

Farnetti's interest when they approved and ratified the agreement.

As we said in *Landau v Percacciolo* (66 AD2d 80, 88, *supra*): "[t]he intent of the Legislature in requiring disclosure by any municipal officer * * * was obviously to publicize the conflict of interest, so that the citizenry and the governing body of the municipality might take appropriate account of his personal interest in appraising the public benefit of a proposed transaction". Disclosure in this case was sufficient to protect the public-interest purpose underlying the statute.

We also disagree with Special Term's conclusion that, because CSEA "is not one of the entities specified in (section 802 [subd 1, par f])", the collective bargaining agreement between the County of Suffolk and CSEA is not exempt from the operation of section 801. All parties to this action agree that CSEA is an unincorporated association organized under the General Associations Law. The parties' disagreement, however, focuses on whether CSEA is a voluntary nonprofit association.

CSEA is a local subdivision of CSEA, Inc., although they are separate legal entities. Special Term was of the view that CSEA, Inc.'s status was irrelevant, but its status as a "not-for-profit" corporation was established by the uncontradicted evidence submitted by CSEA. This evidence included an Internal Revenue Service letter, dated September 22, 1976, which certified that CSEA, Inc., was a tax-exempt organization under the Internal Revenue Code. CSEA, Inc.'s comptroller stated in an affidavit that it was his "understanding that not-for-profit status is a precondition for being among those exempt organizations listed in Section 501 (c) of the Internal Revenue Code of 1954". CSEA, Inc.'s certificate of amendment of the certificate of incorporation, dated October 19, 1973, states in the third paragraph that CSEA, Inc. "is a corporation as defined in subparagraph (a) (5) of Section 102 of the Not-For Profit Corporation Law and is a Type A corporation under Section 201 of said law".

Pertinent to CSEA, CSEA, Inc.'s comptroller stated that, in addition to CSEA, Inc., "all of its Locals * * * have been granted tax exempt status by the United States Internal Revenue Service * * * As can be seen from the attached documents, collectively known as Exhibit 2, CSEA [Inc.], and its Locals and Units, enjoy tax exempt status as a labor organization". The comptroller also stated:

"[B]oth CSEA, Inc. and its various Locals and Units, such as [CSEA] are not-for-profit-entities. CSEA, Inc., is a not-for-profit corporation while * * * CSEA and all other CSEA Locals, with

the exception of the Westchester County Local, are unincorporated associations * * *

"By 'not-for-profit' your deponent means an entity existing for purposes other than pecuniary profit or financial gain and one in which no part of the assets, income or profit are distributed to or enures to the benefit of members, directors or officers. Your deponent avers that CSEA, Inc., and all of its Locals and Units, including Suffolk Chapter, are not for profit entities".

In a similar vein, CSEA's attorney also alleged that CSEA is a voluntary not-for-profit association.

The General Associations Law does not contain a definition of a not-for-profit association. However, reference may be made to the definition of a not-for-profit corporation set forth in section 102 (subd [a], par [5]) of the Not-For-Profit Corporation Law. Similar to that portion of the comptroller's affidavit quoted above, section 102 (subd [a], par [5]) in relevant part provides that a not-for-profit corporation is one which is formed "exclusively for a purpose or purposes, not for pecuniary profit or financial gain, for which a corporation may be formed under this chapter, and * * * no part of the assets, income or profit of which is distributable to, or enures to the benefit of, its members, directors or officers except to the extent permitted under this statute".

Article II of the "Model Local Constitution", which was mandated by the board of directors of CSEA, Inc., for use by all locals, including CSEA, states as its "Purpose and Policy" that: "This Local is organized as a subdivision of the Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, and exists to promote the organization of workers in general and public employees in particular, to represent its members with respect to all terms and conditions of employment, to uphold and extend the principles of merit and fitness in public employment, to maintain and promote efficiency in public service and to advance the interests of all civil service employees. It is dedicated to the principle that Government is the servant and not the master of the people, that its objectives are to be attained by truly democratic methods".

Section 2 of article I of CSEA, Inc.'s Financial Standards Code provides that, "All funds rebated from CSEA, Inc., to regions, locals and units, (subordinates), are rebated in trust by CSEA Inc. on behalf of the members and agency shop fee payers. All funds received by subordinates are to be spent only to represent its members and agency shop fee payers with respect to all terms and conditions of employment and in furtherance of legitimate

union business. No attempt is made to list specifically those instances considered legitimate union business. Rather, this Code provides general guidelines. The Officers and Executive Committee are expected to exercise their fiduciary responsibility within these guidelines. If there is a question concerning legitimacy that cannot be resolved by the Officers and/or the Executive Committee, the statewide Treasurer must be consulted". Section 3 of article I in relevant part provides, "The purpose of this Code is to establish minimum standards to be met by subordinate bodies in the handling of funds and other assets of such subordinate bodies and in the maintenance of financial records".

█ The plaintiff does not dispute this evidence, but argues, rather, that the Legislature did not intend to include CSEA, or any employee union, within the exceptions set forth in section 802 of the General Municipal Law. This is so, according to the plaintiff, because "CSEA is an organization whose sole purpose is the financial betterment of its members and while the organization itself may be non-profit, its purpose is purely profit motivated". We decline to adopt such a narrow view of the statute and, on the basis of the record before us, conclude that pursuant to section 802 (subd 1, par f), CSEA is a nonprofit association (see *Brown v Sombrotto,* 523 F Supp 127, 133-134, app dsmd 685 F2d 423).

We also reject the plaintiff's assertion that CSEA is not a voluntary association. To become a member of CSEA, an affirmative act is required, viz., the prospective member must first sign a dues deduction card. Moreover, the voluntary nature of union membership is a matter of State law (Civil Service Law, § 202; but cf. Civil Service Law, § 201, subd 2, par [b]).

With regard to the parties' remaining contentions, we either need not reach them in light of our disposition or they are without merit.

Accordingly, the judgment should be reversed, summary judgment granted in favor of defendants, and the collective bargaining agreement declared valid.

WEINSTEIN, RUBIN and EIBER, JJ., concur.

Judgment of the Supreme Court, Suffolk County, dated March 12, 1984, reversed, on the law, with one bill of costs payable to appellants appearing separately and filing separate briefs, plaintiff's motion for summary judgment denied, defendants' cross motions granted, and it is declared that the collective bargaining agreement between the County of Suffolk and the

Suffolk County Chapter of the Civil Service Employees Association, Inc., effective January 1, 1982 through December 31, 1985, is valid.