■ RURAL COMMUNITY COALITION, INC., et al., Respondents, v VILLAGE OF BLOOMINGBURG et al., Defendants, and TOWN OF MAMAKATING et al., Respondents, and SHALOM LAMM et al., Appellants. [987 NYS2d 654]—

Lahtinen, J.P. Appeals (1) from an order of the Supreme Court (Schick, J.), entered February 14, 2014 in Sullivan County, which granted plaintiffs' motion for a preliminary injunction, and (2) from an order of said court, entered April 14, 2014 in Sullivan County, which, among other things, denied certain defendants' motion to increase the amount of the undertaking set forth in the prior order.

This dispute arises out of a development in progress of a 396-unit townhouse project in defendant Village of Bloomingburg, a village located in Sullivan County that had a population of about 400 people. Defendants Shalom Lamm and Kenneth Nakdimen, acting at times through various entities, are the developers of the project, which traces its relevant beginning to 2006. Defendant Raymond Farms, LLC, a Lamm and Nakdimen entity, entered into a confidential agreement in May 2006 with, among others, Duane Roe and Roe's then corporation, Sullivan Farms

---

* The father does not challenge Family Court's calculation of his pro rata share.

II (which is now a Lamm and Nakdimen controlled entity). Under the terms of the May 2006 confidential agreement, Sullivan Farms II and Roe were to play key roles in acquiring property for the project in the Village as well as the bordering defendant Town of Mamakating, ensuring that the portion of the property in the Town was annexed by the Village, and obtaining necessary approvals to construct 400 townhouse units.[1]

The Town and Village found that it was in the public interest for the Village to annex about 240 acres from the Town, including land upon which the proposed project would be constructed. The Village annexed the relevant parcels by Local Law No. 3 (2006) of the Village (hereinafter the 2006 local law), which was filed with the Secretary of State in December 2006. Although the underlying order of annexation noted that the parcels would be zoned R-1 with a PUDR (planned unit development residential) overlay, the 2006 local law failed to mention the zoning classification, which was corrected in Local Law No. 2 (2008) of the Village (hereinafter the 2008 local law) that set forth the zoning classification. Thereafter, a State Environmental Quality Review Act (*see* ECL art 8) review of the project was conducted during 2008 and 2009. In May 2010, the Village entered into a development agreement in which the project developers agreed to complete or provide financial guarantees to construct a wastewater treatment plant and related infrastructure.[2] The Village Planning Board certified subdivision approval and the final subdivision plat was filed in June 2011. Building permits were issued for three model townhouses, which were completed by July 2012.

The developers then applied for additional building permits for phase one of the project, as well as work related to the wastewater treatment plant. Those permits were granted in October 2012 and, also that month, several plaintiffs in this case commenced a declaratory judgment action challenging the 2011 final subdivision approval (*Rural Community Coalition v Village of Bloomingburg*, Sup Ct, Sullivan County, index no. 2888/12). In April 2013, Supreme Court (Cahill, J.) dismissed that action as time-barred and further noted that the court would not have granted injunctive relief since those plaintiffs established neither a likelihood of success nor that the equities weighed in their favor.

---

1. Roe reportedly thereafter inaccurately portrayed himself as the developer and the project as 125 second homes with a golf course.

2. One of the conditions included in the Village Planning Board's conditional approval of the project was that the project developers either complete or financially guarantee the construction of a wastewater treatment plant and related infrastructure.

Construction thus continued, with the developers reportedly spending about $5 million on the wastewater treatment plant, which according to the developers has been completed. They also obtained 127 building permits for the first phase of the residential project and, by January 2014, were in various stages of construction on 84 units. At that time, the purported total spent on all aspects of the project since commencement in 2006 was, according to the developers, about $25 million. In January 2014, plaintiffs commenced this action seeking, among other things, a permanent injunction and alleging, among other things, that the 2006 annexation was void because inhabitants of the annexed area had not voted on the issue of annexation, that the 2010 development agreement was void because the then Mayor of the Village (Mark Berentsen) had a conflict of interest, and that the 2008 local law, as well as zoning determinations, had various defects.

Upon commencing this action, plaintiffs moved for a preliminary injunction and obtained a temporary restraining order in January 2014 preventing Sullivan Farms II and Raymond Farms from proceeding with "any and all construction activity" on the project property. Prior to filing responsive papers or serving an answer, Lamm, Nakdimen, Sullivan Farms II, Raymond Farms and defendant Sullivan Farms III, LLC (hereinafter collectively referred to as the project defendants) requested an immediate hearing to seek vacatur of the temporary restraining order. The parties appeared before Supreme Court (Schick, J.) and, at that time, the Town and defendant Town Board of the Town of Mamakating (hereinafter collectively referred to as the Town defendants) supported the relief sought by plaintiffs. After hearing the parties' arguments, Supreme Court issued an order preliminarily enjoining Sullivan Farms II and Raymond Farms from engaging in construction activity with very limited exceptions. Supreme Court further directed that plaintiffs post an undertaking in the amount of $100,000 and, thereafter, the court rejected the project defendants' application to increase, as well as plaintiffs request to decrease, the amount of the undertaking. By separate notices of appeal, the project defendants seek review of the order granting a preliminary injunction and the subsequent order refusing to alter the amount of the undertaking. This Court stayed so much of the preliminary injunction as prevented the completion of 12 buildings that had been framed (2014 NY Slip Op 67765[U] [2014]), and subsequently ordered that the two appeals be heard together (2014 NY Slip Op 69161[U] [2014]).

"[B]ecause preliminary injunctions prevent the litigants from

taking actions that they are otherwise legally entitled to take *in advance of an adjudication on the merits*, they should be issued cautiously" (*Uniformed Firefighters Assn. of Greater N.Y. v City of New York*, 79 NY2d 236, 241 [1992]; *see H. Meer Dental Supply Co. v Commisso*, 269 AD2d 662, 663 [2000]; *Hendrickson v Saratoga Harness Racing*, 170 AD2d 719, 720 [1991]). A preliminary injunction constitutes "drastic relief" (*Troy Sand & Gravel Co., Inc. v Town of Nassau*, 101 AD3d 1505, 1509 [2012]; *see Cooper v Board of White Sands Condominium*, 89 AD3d 669, 669 [2011]) and, while ordinarily a decision within the trial court's discretion, nonetheless the party seeking such relief "must demonstrate a probability of success on the merits, danger of irreparable injury in the absence of an injunction and a balance of equities in its favor" (*Nobu Next Door, LLC v Fine Arts Hous., Inc.*, 4 NY3d 839, 840 [2005]; *see Doe v Axelrod*, 73 NY2d 748, 750 [1988]; *Moore v Ruback's Grove Campers' Assn., Inc.*, 85 AD3d 1220, 1221 [2011]). The ruling on a motion for a preliminary injunction—whether granted or denied—does not establish the law of the case nor is it an adjudication on the ultimate merit of the underlying action (*see Town of Concord v Duwe*, 4 NY3d 870, 875 [2005]; *Trump on the Ocean, LLC v State of New York*, 79 AD3d 1325, 1327 [2010], *lv dismissed and denied* 17 NY3d 770 [2011]).

The project defendants argue, among other things, that the lengthy delays in bringing this action, as well as the fact that an earlier action challenging the project was dismissed, weigh strongly against finding that plaintiffs met their burden of establishing a likelihood of success. At argument of the motion before Supreme Court, the court indicated that plaintiffs' contentions regarding the local board's zoning determinations did not appear sufficiently meritorious in light of the dismissal in the earlier action. The court was troubled, however, by (and ostensibly granted the preliminary injunction based upon) whether the failure to conduct a referendum rendered the annexation void and whether an alleged conflict of interest involving Berentsen (the Village Mayor) rendered the 2010 development agreement void.

Residents of an area proposed for annexation have the right to vote whether to approve the annexation (*see* NY Const, art IX, § 1 [d]; General Municipal Law § 713 [1]). Although at the time this annexation occurred there was authority for permitting an annexation in some circumstances without a referendum (*see Matter of City of Utica v Town of Frankfort*, 10 NY3d 128, 134 n 1 [2008] [setting forth Appellate Division cases that had allowed such annexations]), it is now clear that a referen-

dum is required of residents in an area proposed for annexation (*see id.* at 134-135). Here, however, plaintiffs waited over seven years before challenging the annexation. During such time extensive governmental activity occurred—ranging from review under the State Environmental Quality Review Act to various zoning determinations—and, in reliance thereon, the project defendants expended significant money. Further, there is no indication that plaintiffs who reside in the annexed area or other residents of that area did not receive Village municipal services during the past seven years or were precluded from participating in Village governmental activities, including providing input to the Planning Board regarding the proposed project as it progressed.

We are unpersuaded by plaintiffs' assertion that, in essence, the failure to conduct a referendum leaves the annexation subject to being set aside at any time in the future without regard to any time limitation. Cases involving an alleged failure to adhere to a voting requirement during an annexation have generally been found to be subject to a pertinent limitations' period (*see CG6 Concrete Specialists, Inc. v Department of Police, Town of Berryville, Va.,* 2004 WL 2203451, *2, 2004 US Dist LEXIS 19663, *6 [WD Va, Sept. 30, 2004, No. 5:04CV00014]; *St. Louis County, Mo. v City of Town & Country,* 590 F Supp 731, 735 [ED Mo 1984]; *cf. Atkins v Town of Rotterdam,* 266 AD2d 631, 633 [1999]). A statute of limitations may apply even when conduct inconsistent with a statute or the state constitution is alleged (*see New York Pub. Interest Research Groups v Levitt,* 62 AD2d 1074, 1075 [1978], *appeals dismissed* 46 NY2d 849, 850 [1979]; *see also Matter of Smith v Town of Plattekill,* 13 AD3d 695, 697 [2004]). Simply stated, "a [s]tatute of [l]imitations does not have the effect of curing the underlying wrong, but rather extinguishes the right to judicial relief" (*New York Pub. Interest Research Groups v Levitt,* 62 AD2d at 1075). We need not decide the particular limitations' period for challenging an annexation made without a referendum—whether four months (*see* CPLR 217), six years (*see* CPLR 213) or some time in between (*see e.g.* CPLR 9802). Plaintiffs failed to establish a likelihood that a challenge to the annexation based upon the failure to conduct a referendum would be viable where, as here, over seven years have passed since the annexation.[3] Next, we consider the 2010 development agreement, which plaintiffs contend is void because Berentsen had a conflict of interest

---

**3.** The fact that the 2008 local law added the zoning classifications omitted from the 2006 local law (which had effected the annexation) does not extend the time to challenge the 2006 annexation.

arising from the 2009 acquisition of some project property by himself and his parents (*see* General Municipal Law § 804). The Second Department, in a case affirmed by the Court of Appeals, has held that the three-year statute of limitations of CPLR 214 (2) applies to such a claim (*see Stettine v County of Suffolk*, 105 AD2d 109, 113 [1984], *affd* 66 NY2d 354 [1985]). The Berensten deeds had been a matter of public record since 2009, before the 2010 development agreement was executed. Any conflict was known or should have been known as of the execution in 2010 of the development agreement, which was also a public document. This action was not brought until 2014.

Long delays can be relevant to the issue of whether equitable injunctive relief should be granted (*see e.g. Zaccaro v Congregation Tifereth Israel of Forest Hills*, 20 NY2d 77, 80 [1967]; *Bailey v Chernoff*, 45 AD3d 1113, 1115 [2007]). Although plaintiffs allege some unsavory (or worse) conduct by certain people involved directly or indirectly in the project, it is not clear from this record whether they can successfully show that the project defendants engaged in such conduct so as to prevent them from relying on equitable defenses such as laches (*see generally Sparkling Waters Lakefront Assn., Inc. v Shaw*, 42 AD3d 801, 804 [2007]; *Matter of Uciechowski v Ehrlich*, 221 AD2d 866, 868 [1995]). There is no dispute that plaintiffs have been aware of the pending project for many years, with at least one of them having sold property to Sullivan Farms II in 2006, many live nearby and are capable of observing the ongoing construction, and some participated in the 2012 lawsuit challenging the final subdivision approval. No appeal was taken from the dismissal of that lawsuit and, notwithstanding the fact that construction has been ongoing since 2012, plaintiffs did not commence this action until January 2014. Plaintiffs alleged before Supreme Court that part of that delay was due to the fact that they did not discover the May 2006 confidential agreement until 2013; however, their claims are not premised primarily upon that agreement, but rely instead upon aged defects in public actions by various Village entities. The project has proceeded and was well under way at the time that plaintiffs commenced this action, with several buildings near completion and substantial work having been done on the wastewater treatment plant.

The delay in bringing this action is significant and a route around the time-related issues to the merits has not been clearly plotted in the papers before us.[4] Upon review of the record, we are unpersuaded that plaintiffs made a "strong showing" of

---

4. Although the time-related issues are affirmative defenses, the project defendants vigorously asserted such issues before Supreme Court.

likelihood of success on the merits (*Smith v City of Albany*, 115 AD2d 825, 826 [1985] [internal quotation marks and citation omitted]). "Thus, the first prong of the test for preliminary injunctive relief . . . was not satisfied, and, as a matter of law, a preliminary injunction should not have been issued" (*Doe v Axelrod*, 73 NY2d at 751).

The other grounds asserted by plaintiffs and the Town defendants for upholding the preliminary injunction are unavailing. The project defendants' remaining arguments are academic, including their appeal from the separate order denying their request to increase the amount of the undertaking.

McCarthy, Rose, Egan Jr. and Lynch, JJ., concur. Ordered that the order entered February 14, 2014 is reversed, on the law, with costs, and motion for a preliminary injunction denied. Ordered that the appeal from the order entered April 14, 2014 is dismissed, as academic.