OPINION OF THE COURT
Alexander, J.
The facts of this case are essentially undisputed. The question that divides the court is whether under those facts and the applicable provisions of General Municipal Law article 18 (General Municipal Law § 800 et seq.), the collective bargaining agreement between the County of Suffolk and the Suffolk County Chapter of the Civil Service Employees Association (CSEA Suffolk) violates General Municipal Law § 801 since it was negotiated by defendant Farnetti at a time when Local Law No. 4 of 1982 provided that all exempt County employees, including Farnetti, would be granted the same salary adjustments as members of bargaining units 2 and 6 of CSEA Suffolk, thereby creating in Farnetti a "prohibited interest” in the contract that would render it void under General Municipal Law § 804. Special Term declared the contract void because of Farnetti’s "prohibited interest”, but the. Appellate Division reversed and declared the contract valid, finding that CSEA Suffolk is a voluntary nonprofit association within the meaning of General Municipal Law § 802 (1) (f) and is therefore excepted from the proscriptions of General Municipal Law § 801. We now affirm.
General Municipal Law § 802 provides that "[t]he provisions of section eight hundred and one of this chapter shall not apply to: 1 * * * f. A contract with a membership corporation or other voluntary non-profit corporation or association”. The gravamen of appellants’ argument, which the dissent finds determinative, is that while CSEA Suffolk may be a voluntary nonprofit association, it is not the type of voluntary association intended to be excepted under General Municipal Law § 802 (1) (f). They contend that the exception should extend *357 only to nonprofit corporations or associations that are charitable, such as nonprofit hospital corporations, nonprofit animal shelters and volunteer firemen’s associations, because it was intended to protect contracts between a municipality and charitable organizations or organizations formed for the public benefit and not contracts entered into with labor unions whose sole purpose is the betterment of their members.
There can be no doubt that CSEA Suffolk is a voluntary nonprofit association. The record establishes that it enjoys nonprofit status by reason of its relationship with Civil Service Employees Association, Inc. (CSEA, Inc.), a State-wide organization and nonprofit corporation as defined in Not-For-Profit Corporation Law § 102 (a) (5) and § 201. Both CSEA, Inc., and CSEA Suffolk enjoy tax-exempt status under Internal Revenue Code (26 USC) § 501 (c) (5), which status is one of the hallmarks of a nonprofit organization (see, Internal Revenue Code § 501 [c]). CSEA Suffolk’s voluntary character is clear based on Civil Service Law § 202 which gives public employees the "right to form, join and participate in, or to refrain from forming, joining, or participating in, any employee organization of their own choosing.” Although member-oriented employee organizations such as CSEA, Inc., and CSEA Suffolk exist primarily to benefit their membership by enhancing their individual members’ economic position with respect to their jobs, this neither militates against their tax-exempt status (see, Albert and Hansell, Tax Status of Modern Labor Unions, 111 U Pa L Rev 137 [1962]; Bittker and Rahdert, Exemption of Non Profit Organizations from Federal Income Taxation, 85 Yale L Rev 299 [1976]) nor provides a sufficient reason to exclude them from the exception of General Municipal Law § 802 (1) (f).
The legislative history of General Municipal Law § 802 (1) (f) does not compel a contrary conclusion as argued by the dissent. The fact that the Comptroller’s 1957 report on conflicts of interest on the part of municipal officers and employees included in its proposed legislation language taken from General Municipal Law former § 88 that exempted from its conflict of interest proscriptions contracts with voluntary nonprofit corporations or associations "primarily engaged in health or social welfare programs or the community planning for such programs” (see, New York State Dept of Audit and Control, Municipal Officials and Conflicts of Interest: An Analysis of the State Law and a Proposed Statute, 1957, at 78), is unpersuasive in determining the intent of the Legislature in
*358 enacting the new article 18 in 1964. Significantly, no reference to the language from former section 88 was included in the Comptroller’s 1964 report to the Governor in support of A2807, the bill that became the statute that was finally enacted. (See, Bill Jacket, L 1964, ch 946, Apr. 2, 1964 letter from Arthur Levitt to Governor’s counsel.) Thus, the legislative history of section 88, discussed extensively by the dissent, does not provide the conclusive guidance attributed to it. That history was known to the Legislature in 1964 and the fact that those provisions were not carried over to the new legislative enactment provides strong support for the conclusion that the Legislature did not intend to limit the reach and applicability of the exemption for voluntary nonprofit associations as appellants now argue (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 193 [a]; Clason v Baldwin, 129 NY 183, 189; De Grauw v Long Is. Elec. Ry. Co., 43 App Div 502, 503, affd 163 NY 597; cf. Munzinger v United Press, 52 App Div 338). Moreover, as conceded by the dissent, an opinion issued shortly after the enactment of article 18 by Comptroller Levitt, whose study and report provided the impetus for the revision and consolidation of the various statutes respecting conflicts of interest and municipal officials, unequivocally expressed the view that collective bargaining agreements were not "contracts” within the meaning of General Municipal Law § 800 (2) (24 Opns St Comp, 1968, p 60). Indeed, the Comptroller stated that "a 'contract’ contemplates an arrangement between a municipality and a third party whereby a consideration passes from the municipal corporation as a result of goods purchased by it or services rendered to it. Otherwise, relating to the CSEA contract, the highly impractical result would be that every employee of the town who belongs to the CSEA would have an interest in the town-CSEA contract which, although perhaps not prohibited by General Municipal Law § 801 would have to be disclosed by the employee pursuant to § 803. Article 18, in such case, would amount to nothing more than an instrument of harassment without purpose, a result surely not intended by the Legislature” (id., at p 61).
In Matter of De Perno v Dulan (9 NY2d 433), this court had occasion to comment on the legislative intent respecting whether collective bargaining agreements were intended to be included within the sweep of General City Law § 3, a statute from which article 18 also derives, which prohibited city officers from having an interest in a city contract. We said in De Perno that "it is inconceivable that the Legislature in *359 tended these statutes to embrace labor negotiations and agreements” (id., at p 437). Our statement in De Perno was known to Comptroller Levitt and the Legislature when article 18 was proposed, considered and enacted into law, yet not a word is to be found in its legislative history indicating that collective bargaining agreements were not to be outside the scope of article 18 or that labor unions were not to be excepted as voluntary nonprofit associations under section 802 (1) (f). And while it is true that the present Comptroller, in a number of more recent opinions, has held that collective bargaining agreements with unions are subject to the provisions of article 18, it does not appear that any of those situations presented the question of whether or not a labor union such as CSEA was a voluntary nonprofit association, a contract with which would come within the exception of General Municipal Law § 802 (1) (f).
Given the legislative history of this statute and the fact that nothing contained therein indicates a legislative intent .to include only voluntary nonprofit associations that are "primarily engaged in health or social welfare programs or the community planning for such programs” within the exception of General Municipal Law § 802 (1) (f) and the fact that the omission of that language from the Comptroller’s final proposal and the legislation enacted thereon indicates quite the contrary, we decline to read the statute in the restrictive manner urged by appellants and the dissent.