In the Matter of AL TECH SPECIALTY STEEL CORPORATION, Respondent, v NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE et al., Appellants.

Third Department, July 23, 1987

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Leslie Allan* and *Ezra I. Bialik* of counsel), for appellants.

*Harris, Beach, Wilcox, Rubin & Levy (Paul R. Braunsdorf* and *Alan J. Knauf* of counsel; *Patricia A. Hulley* on the brief), for respondent.

## OPINION OF THE COURT

KANE, J. P.

Petitioner operates two specialty steel finishing plants in New York. Each of these facilities uses an acidic chemical compound, known in the trade as "pickle liquor", to remove oxide scale from steel during finishing. After repeated use, the pickle liquor loses its effectiveness and is neutralized with lime. This lime treatment, utilized by petitioner, produces a waste product known as lime stabilized waste pickle liquor sludge (hereinafter LSWPLS).

Under the Resource Conservation and Recovery Act (42 USC §§ 6901-6987), the Environmental Protection Agency (hereinafter EPA) promulgated Federal regulations defining and identifying hazardous wastes *(see,* 40 CFR part 261). Both spent pickle liquor and LSWPLS appeared on the original proposed list of hazardous substances. In response to public comments from the steel industry, EPA removed LSWPLS from the list on November 12, 1980. Spent pickle liquor remained on the list and since the regulations defining hazardous waste also included the sludge from any listed hazardous waste, LSWPLS was still a regulated hazardous waste. This result was apparently not an oversight. EPA expressly declined to affirmatively exclude or "delist" LSWPLS at that time. As a result of petitions from a number of steel companies, EPA eventually did delist LSWPLS in a final rule issued in June 1984 to be effective December 1984.

In 1978, New York passed ECL article 27, title 9. The statute provided for a State hazardous waste management program, as permitted by Federal law. It directed respondent Department of Environmental Conservation (hereinafter DEC) to adopt regulations defining and identifying hazardous wastes

as promulgated by EPA (ECL 27-0903). In January 1982, DEC's first attempt at promulgations of such regulations became effective (see, 6 NYCRR former part 361, recodified as part 371, eff July 14, 1985).

The regulations reiterated the general Federal definitions and guidelines, but sought to incorporate by reference the list of specific hazardous wastes. After court decisions finding this incorporation by reference to be invalid (People v Dommermuth, County Ct, Albany County, Dec. 13, 1982, mot to dismiss appeal granted 93 AD2d 917; People v Dommermuth Petroleum Equip. & Maintenance Corp., County Ct, Rensselaer County, Dec. 13, 1982, mot to dismiss appeal granted 93 AD2d 917), DEC submitted the lists themselves to the Secretary of State for inclusion into the State regulations on December 23, 1982. However, in People v Harris Corp. (104 AD2d 130, lv denied 64 NY2d 1019), this court found that the regulations filed on December 23, 1982 were also invalid. In November 1983, DEC again sought to include the Federal lists into the State regulations and published notice of such. The change was to be effective two months later in February 1984.[1]

Meanwhile, legislation establishing the State Hazardous Waste Remedial Fund was enacted in July 1982 (see, State Finance Law § 97-b; ECL 27-0923). Petitioner filed quarterly returns and paid hazardous waste assessments on its LSWPLS tonnage beginning in September 1982. Each return included a statement that the assessment payments were being made under protest due to petitioner's attempts to have EPA delist LSWPLS. In September 1984, petitioner notified respondent Department of Taxation and Finance (hereinafter DTF) that it was ceasing further payments and requesting refunds of all payments already made (Sept. 1, 1982 to Aug. 31, 1984) based upon EPA's final rule which delisted LSWPLS. DTF contacted DEC and, per the latter's instruction, denied the requested refunds by letter dated November 29, 1984. DTF subsequently issued assessments against petitioner for amounts unpaid from June 1, 1984 to February 28, 1985.

Petitioner commenced this proceeding on March 29, 1985 and served an amended petition on April 5, 1985. Petitioner thereafter moved for leave to serve a second amended petition and for judgment on the petition. Special Term granted leave

---

1. Subsequent activity not relevant herein included enactment of the Federal regulations as emergency regulations in November 1984 and renumbering of the regulations in July 1985.

to amend and the relief requested in the petition (129 Misc 2d 141). This appeal by respondents ensued.

The crucial issue presented upon this appeal concerns Special Term's finding that DEC never validly promulgated a list of hazardous wastes upon which assessments could be made. As previously mentioned, *People v Harris Corp.* (104 AD2d 130, *supra)* determined that the December 1982 attempted promulgation was ineffective for lack of proper notice. Special Term decided that the subsequent effort, which included a November 1983 notice and a February 1984 effective date, was defective for lack of a public hearing, as required by ECL 3-0301 (2) (a). Respondents argue that no hearing was required by ECL 27-0903 (1), the notice and comment period complied with the State Administrative Procedure Act and, therefore, the regulations were effective as of at least February 1984.[2]

Respondent read ECL 27-0903 (1) as a command to adopt EPA's hazardous waste regulations in toto. Since DEC was not to exercise any discretion in the promulgation of these regulations, respondents argue that no public hearing or review by the State Environmental Board (hereinafter Board) *(see,* ECL 3-0301 [2] [a]; 5-0107 [2]) was required *(see, People v Roth,* 129 Misc 2d 381, *revd on other grounds* 121 AD2d 576, *lv denied* 68 NY2d 773). Respondents present an appealing argument that the Legislature may have intended DEC to copy EPA's regulations into State law and only exercise discretion (with Board approval) in amending the regulations. In our opinion, however, the statutory language does not provide for such nondiscretionary copying, as is indicated by comparison with the part of the statute which provides for emergency regulations by way of such copying *(see,* ECL 27-0903 [4], as added by L 1981, ch 719, § 7). As a matter of fact, during DEC's first attempt at promulgation of regulations under this statute, public hearings apparently were held in June 1981 *(see, People v Harris Corp.,* 104 AD2d 130, 134, *supra).* Moreover, respondents' argument that identity between Federal and State regulations must necessarily have been intended to insure Federal funding ignores the possibility of more restrictive State regulation. Finally, we find that respondents have failed to explain why the general dictates of regulation promulga-

2. In their brief on this appeal, respondents state that they reserve the right to appeal from this court's invalidation of the prior attempts at promulgation. It is unclear what is intended by this statement since they note in another part of their brief that leave to appeal was denied.

tion which require a hearing (ECL 3-0301 [2]) did not have to be complied with *(see, People v Macellaro,* 131 Misc 2d 383).

Next, we reject respondents' contention that the petition was untimely. Respondents' determination did not become final and binding upon petitioner *(see,* CPLR 217) until DTF, on November 29, 1984, informed petitioner that its request for refunds was denied. Accordingly, this proceeding, commenced on March 29, 1985, was timely.

Respondents also argue that the general rule of no recovery of voluntarily made tax payments should be applied herein *(see, City of Rochester v Chiarella,* 58 NY2d 316, 323, *cert denied sub nom. Quality Packaging Supply Corp. v City of Rochester,* 464 US 828). This argument is without merit. Petitioner protested every hazardous waste assessment payment, putting respondents on notice of its objection to inclusion of LSWPLS within the category of hazardous wastes. While these protests did not directly address procedural irregularities in the promulgation of the regulations, they did notify respondents "that [they] may be obliged to refund the taxes and [are] required to be prepared to meet that contingency" *(Mercury Mach. Importing Corp. v City of New York,* 3 NY2d 418, 426).

We have examined respondents' remaining contentions and find them unpersuasive. Since we are finding in favor of petitioner, it is unnecessary to consider its other arguments. The judgment should therefore be affirmed.

MAIN, CASEY, WEISS and MIKOLL, JJ., concur.

Judgment affirmed, without costs.