772 F.Supp. 91 (1991)
NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION, et al., Plaintiffs and Counter-Defendants,
v.
UNITED STATES DEPARTMENT OF ENERGY, et al., Defendants and Counter-Plaintiffs.
Nos. 89-CV-194 to 89-CV-197.
United States District Court, N.D. New York.
August 13, 1991.
*92 *93 Robert Abrams, Atty. Gen. of the State of N.Y., Albany, N.Y. (Douglas H. Ward, Joel F. Spitzer, Asst. Attys. Gen., of counsel), for plaintiffs and counter-defendants.
Richard B. Stewart, Asst. Atty. Gen., Environment & Natural Resources, Environmental Defense Section, U.S. Dept. of Justice, Washington, D.C., Frederick J. Scullin, Jr., U.S. Atty., N.D.N.Y., Albany, N.Y. (Paul D. Silver, Asst. U.S. Atty., of counsel), U.S. Dept. of Justice, Washington, D.C. (Richard A. Correa, Thomas R. Lotterman, David M. Thompson, Trial Attys., of counsel), for defendants and counter-plaintiffs.

MEMORANDUM  DECISION AND ORDER
McCURN, Chief Judge.

BACKGROUND
In January, 1989, the New York State Department of Environmental Conservation ("NYDEC" or "EnCon") commenced these four consolidated actions in New York State Supreme Court against the United States Department of Energy ("United States"), as representative of ten federal facilities located in New York State which have been underpaying certain regulatory charges assessed against them by the NYDEC.[1]
Plaintiff's action seeks a judgment declaring that the United States is required to pay the NYDEC certain past due fees totalling approximately $1,000,000.00, as well as accrued interest on this sum. Additionally, this action seeks a declaration that the United States may no longer withhold payment of such charges to the NYDEC. In its answer, the United States has asserted a counterclaim against EnCon which seeks a refund of approximately $400,000.00, plus interest, for payments made by the United States to the NYDEC regarding the regulatory fees charged by EnCon.
At all times relevant to the instant proceeding, the NYDEC has required the subject entities to secure and maintain various certificates, approvals and permits in order to operate such facilities. Both parties agree that the United States has obtained all of these required certificates, and paid the fees associated with these permits.[2] *94 However, in addition to these permit fees, the NYDEC has also assessed certain regulatory charges against the United States which pertain to the physical operation of these entities. It is these regulatory charges, and not the permit fees, which are the subject of the present dispute.
Since April 1, 1983, operators of stationary combustion installations, process air combustion sources and incinerators which are subject to New York Environmental Conservation Law ("NYECL") Article 19, Titles 3 or 5, have been required by EnCon to pay annual fees as provided for in NYECL § 72-0302 ("air regulatory" charges). Hazardous waste generators, and the operators of such facilities which are subject to Titles 3, 7, 9 or 11 of NYECL Article 27, have been required to pay the fees set forth in NYECL § 72-0402. Waste transporters which are subject to the permit requirements detailed in Title 3 of NYECL, Article 27 have similarly been required to pay the annual charges set out in NYECL § 72-0502 since April 1, 1983 (these two fees will be collectively referred to by this court as "waste regulatory" charges). As of this same date, operators of waste water facilities subject to regulation under Titles 7 or 8 of NYECL, Article 17 have been required to pay the annual fees detailed in NYECL § 72-0602 ("water regulatory" charges).
The regulatory charges imposed by EnCon against facilities, including the subject entities, vary in relation to the particular size or quantity of such facility's operations (e.g. gallons, pounds, vehicles, etc.), rather than upon the particular services rendered to such facilities by the NYDEC. Over the past several years, these fees have increased in amount, and the receipts from these charges have been placed by the State in various funds.
Beginning in 1985, the rates for waste regulatory charges were statutorily doubled from the 1983 and 1984 levels. In 1989, the rates of the air regulatory charges were quintupled as compared to the 1983 through 1988 levels. In this same year, the water regulatory charges were more than doubled from the 1983 through 1988 levels. Turning to the State's use of these funds, in 1983 and 1984, all waste regulatory charges received were deposited into the New York's general revenue fund. From 1985 through 1988, half of the receipts collected by these fees were placed in the State's general revenue fund, while the other half were deposited into a special hazardous waste remedial fund  New York's environmental superfund. Since 1989, half of the waste regulatory charges have been deposited into the New York State superfund, with the balance being deposited into the State's special enforcement fund. EnCon's air and water regulatory charges were deposited into New York State's general revenue fund until 1989, at which time the State began depositing these particular assessments into a special environmental enforcement fund developed by the State.
Prior to the present action, the United States did not challenge EnCon's regulatory charges in a formal administrative or judicial proceeding. Rather, the subject facilities refused to pay the bulk of the regulatory fees charged by the State. Moreover, each year after it was billed for these charges, the United States protested the amount sought and noted that it had constitutional concerns and objections to the fees.
On February 17, 1989, the United States filed a notice of removal of these actions from the New York State Supreme Court in Albany County to the United States District Court in the Northern District of New York.
By the present motions, the plaintiff seeks summary judgment declaring that the United States must pay EnCon $1,011,539.82 in unpaid annual regulatory fees along with interest as provided for in NYECL § 72-0201(6). The United States has also moved for summary judgment concerning these regulatory charges, and by its motion seeks an order directing the NYDEC to refund previously paid waste and water regulatory charges in the amount of $420,863.95, plus interest.

*95 DISCUSSION

(a) The Doctrine of Sovereign Immunity.
Under the doctrine of sovereign immunity, federal and state governments are immune from taxation by each other. National R.R. Passenger Corp. v. City of N.Y., 695 F.Supp. 1570 (S.D.N.Y.1988), aff'd in mem. 882 F.2d 710 (2d Cir.1989). As a result, neither the United States nor a state may impose a tax on the other absent the clear consent of the assessed entity. Davis v. Michigan Dep't of Treasury, 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). This well settled rule, first established by Chief Justice Marshall in M'Culloch v. Maryland, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), is premised upon "an implied limitation on the taxing power of each, such as to forestall undue interference with the governmental activities of the other." Graves v. New York ex rel. O'Keefe, 306 U.S. 466, 477-78, 59 S.Ct. 595, 596-97, 83 L.Ed. 927 (1939); National R.R., 695 F.Supp. at 1573. Thus, absent its consent, the federal government and its instrumentalities are absolutely immune from direct taxation by a State. Mayo v. United States, 319 U.S. 441, 448, 63 S.Ct. 1137, 1141, 87 L.Ed. 1504 (1943), reh'g denied 320 U.S. 810, 88 L.Ed. 489 (1943); National R.R., 695 F.Supp. at 1573. However, whenever Congress affirmatively declares that the federal government's instrumentalities or property are subject to state regulation and taxation, and such declaration is made in a manner which is clear and unambiguous, then, and only then, will the federal government be subject to such regulation and taxation. Hancock v. Train, 426 U.S. 167, 178-179, 96 S.Ct. 2006, 2012-13, 48 L.Ed.2d 555 (1976). Applying these principles to the facts in the instant action, the federal government will only be liable to the NYDEC for the charges at issue if the United States has clearly and unambiguously consented, through federal statutes, to the payment of these fees.

(b) The Federal Statutes.
The NYDEC alleges that certain statutes passed by Congress constitute a blanket waiver of the defendant's sovereign immunity with respect to the claims involved in the present case. It contends that these statutes clearly and unambiguously subject the United States to all state requirements, including regulations relating to the payment of the regulatory fees at issue, which relate to the control and abatement of air and water pollution and the disposal of solid or hazardous wastes in the State. In light of this position, a review of the language contained in the subject statutes is warranted.
The Clean Air Act, 42 U.S.C. § 7418 ("CAA") provides, in part, that in controlling air pollution from federal facilities:
(a) Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government ... shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of air pollution in the same manner, and to the same extent as any nongovernmental entity. The preceding sentence shall apply (A) to any requirement whether substantive or procedural (including any recordkeeping or reporting requirement, any requirement respecting permits and any other requirement whatsoever), (B) to the exercise of any Federal, State or local administrative authority, and (C) to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner. This subsection shall apply notwithstanding any immunity of such agencies, officers, agents, or employees under any law or rule of law.
(b) The President may exempt any emission source of any department, agency, or instrumentality in the executive branch from compliance with such a requirement if he determines it to be in the paramount interest of the United States to do so....
The Clean Water Act, 33 U.S.C. § 1323 ("CWA"), states, in relevant part, that:
(a) Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government ... shall be subject to, and *96 comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity including the payment of reasonable service charges. The preceding sentence shall apply (A) to any requirement whether substantive or procedural (including any recordkeeping or reporting requirement, any requirement respecting permits and any other requirement, whatsoever), (B) to the exercise of any Federal, State, or local administrative authority, and (C) to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner. This subsection shall apply notwithstanding any immunity of such agencies, officers, agents, or employees under any law or rule of law.
The third statute relied upon by the plaintiff in support of its motion, the Resource Conservation and Recovery Act ("RCRA"), provides, in salient part, that:
Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government ... shall be subject to, and comply with, all Federal, State, interstate, and local requirements, both substantive and procedural (including any requirement for permits or reporting or any provisions or injunctive relief and such sanctions as may be imposed by a court to enforce such relief), respecting control and abatement of solid waste or hazardous waste disposal in the same manner, and to the same extent, as any person is subject to such requirements, including the payment of reasonable service charges. Neither the United States, nor any agent, employee, or officer thereof, shall be immune or exempt from any process or sanction of any State or Federal Court with respect to the enforcement of any such injunctive relief. The President may exempt any solid waste management facility of any department, agency, or instrumentality in the executive branch from compliance with such a requirement if he determines it to be in the paramount interest of the United States to do so.
See 42 U.S.C. § 6961.

(c) The Parties' Contentions.
The United States acknowledges that the above-cited statutes constitute a limited waiver of the government's sovereign immunity. However, it claims that the fees sought by EnCon in the present action are, in reality, an impermissible tax charged by the NYDEC for which it is not liable. Alternatively, the United States claims that the charges sought by the plaintiff are unreasonable in light of the services rendered to the federal facilities.[3]
The NYDEC claims that the federal government lacks immunity regarding the regulatory charges sought by the plaintiff because such fees are requirements specifically delineated in the NYECL. The plaintiff argues that these charges are "requirements with which the United States must comply under the blanket waiver provisions of the [CAA, CWA and RCRA]."[4]
In order to properly resolve this aspect of the dispute before it, this court must determine whether (i) the federal statutes at issue constitute a waiver of the United States' sovereign immunity from State-assessed taxes and if not, whether the regulatory charges sought by the NYDEC are (ii) impermissible taxes assessed against the United States or (iii) unreasonable regulatory charges for which the defendant is not liable.

*97 (i) Has the United States waived its immunity to any taxes, fees or other charges which the State of New York has assessed or may assess against it in the future?
In support of its motion for summary judgment, the plaintiff claims that "on their face, the blanket waiver provisions in CAA § 118, CWA § 313 and RCRA § 6001, clearly and unambiguously subject the facilities of all branches of the Federal Government to all state requirements with which all non-governmental entities must comply ... unless the President has granted a specific exemption thereto."[5] The NYDEC continues by alleging that both legislative history and case law support its contention that the CWA, CAA and the RCRA are "blanket waivers" of the federal government's sovereign immunity from any taxes, charges or fees which New York, or presumably any State, might assess regarding environmental programs designed to eliminate air and water pollution or regulate solid or hazardous waste disposal.
The United States claims that the federal statutes cited by the plaintiff do not constitute a complete waiver of the federal government's sovereign immunity. With respect to plaintiff's contention that the defendant has consented to the payment of taxes by way of the subject federal statutes, the United States declares unequivocally that "Congress has not consented to taxes through the CWA and RCRA. Congress knows how to allow taxes. It has not done so here."[6]
"[T]he United States, as sovereign, is immune from suit save as it consents to be sued...." United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980), reh'g denied 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980) (quoting U.S. v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 769-70, 85 L.Ed. 1058 (1941)). "Waivers of immunity must be `construed strictly in favor of the sovereign,' ... and not `enlarge[d] ... beyond what the language requires.'" Ruckelshaus v. Sierra Club, 463 U.S. 680, 685, 103 S.Ct. 3274, 3278, 77 L.Ed.2d 938 (1983) (citations omitted). Moreover, "[a] waiver of sovereign immunity `cannot be implied but must be unequivocally expressed.'" Mitchell, 445 U.S. at 538, 100 S.Ct. at 1351, 63 L.Ed.2d 607 (quoting U.S. v. King, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969)). Thus, in the present case, this court can hold that the CWA and the RCRA are "blanket waivers" of the United States' sovereign immunity from taxes only if these statutes provide for such a waiver in a clear and unambiguous manner. Hancock, supra, 426 U.S. at 179, 96 S.Ct. at 2012, 48 L.Ed.2d 555; E.P.A. v. California State Water Resources Control Board, 426 U.S. 200, 211, 96 S.Ct. 2022, 2028, 48 L.Ed.2d 578 (1976).
The CWA and the RCRA both explicitly provide that the federal government is "subject to, and [must] comply with, all ... State ... requirements" respecting the control and abatement of water pollution, and solid or hazardous waste disposal. See 33 U.S.C. § 1323, 42 U.S.C. § 6961. In interpreting this language of these statutes, the plaintiff claims that:
[F]ees which must be paid by those who are subject to regulation under state programs for the control and abatement of air pollution, water pollution, and solid or hazardous waste disposal, are requirements respecting such programs.... Therefore, the United States is required to comply with such fee requirements.[7]
However, by using the word "requirements" in these statutes, Congress did not intend to subject the federal government to any and all financial obligations imposed by a State which relate to such State's environmental programs. Rather, the "requirements" referred to in the CWA and the RCRA relate only to pollution standards that a State might impose as part and parcel of its environmental programs. See, e.g., State of New York v. United States, 620 F.Supp. 374, 383 *98 (E.D.N.Y.1985) (requirements under CWA relate to state pollution standards or limitations); State of Florida Dep't of Envir. Reg. v. Silvex Corp., 606 F.Supp. 159, 163 (M.D.Fla.1985) (requirements under RCRA relate to "pollution standards or limitations, compliance schedules, emission standards, and control requirements"); California v. Walters, 751 F.2d 977, 978-979 (9th Cir.1984) (requirements discussed in the RCRA relate to state permit requirements, and not to criminal sanctions). Courts have consistently held that the waivers provided by the RCRA and the CWA are to be interpreted narrowly, rather than expansively. See, e.g., Mitzelfelt v. Dep't of Air Force, 903 F.2d 1293, 1295-96 (10th Cir. 1990) ("Congress knew how to indicate an intent to waive federal sovereign immunity to state civil penalties and it did not do so when it enacted RCRA"); McClellan Ecological Seepage Situation v. Weinberger, 655 F.Supp. 601, 603-05 (E.D.Cal.1986) (United States not subject to penalties under the RCRA or CWA); State of California v. U.S. Dep't of Navy, 845 F.2d 222, 224-226 (9th Cir.1988) (federal government not subject to penalties under the CWA); Meyer v. United States Coast Guard, 644 F.Supp. 221, 223 (E.D.N.C.1986) (RCRA "does not waive the federal government's immunity from the imposition of civil penalties by state agencies"); United States v. State of Washington, 872 F.2d 874, 877 (9th Cir.1989) ("Congress has not expressly waived sovereign immunity from civil penalties imposed by state administrative agencies"); but see State of Maine v. Dep't of Navy, 702 F.Supp. 322, 330 (D.Me.1988) (RCRA subjects federal government to civil penalties imposed by state law); State of Ohio v. U.S. Dep't of Energy, 904 F.2d 1058 (6th Cir.1990) (United States subject to penalties under the CWA and RCRA), cert. granted ___ U.S. ___, 111 S.Ct. 2256, 114 L.Ed.2d 709 (1991).
After thoroughly reviewing prior court decisions which have considered the scope and breadth of the waivers provided by the CWA and the RCRA, this court holds that both of these statutes direct the United States to comply with all state requirements relating to the acquisition of environmental permits, emission standards imposed on facilities, and other related state pollution regulations. However, these statutes are not blanket waivers of the United States' sovereign immunity from the imposition and assessment of taxes by a State. Indeed, the pertinent portions of these statutes never even mention the word "taxes" when referring to the obligations of the United States. Congress has specifically subjected the federal government to the payment of state taxes in prior statutes, including one environmental statute.[8] It has not done so here. Thus, the plaintiff's motion for summary judgment cannot be granted on its theory that these statutes constitute unlimited waivers of the United States' sovereign immunity from taxes and other assessments.

(ii) Are the charges sought by EnCon an impermissible tax on the United States?
Since this court has determined that the language contained in the relevant federal statutes do not constitute a blanket waiver which necessarily subjects the United States to any and all taxes, charges or fees assessed against it by a State as part of such State's environmental programs, this court must resolve the issue of whether the fees sought by the NYDEC in the present action are impermissible taxes from which the federal government is immune or reasonable *99 regulatory charges for which the United States is liable to EnCon.[9]
The parties agree that the proper test for this court to utilize in ascertaining whether the charges sought by the NYDEC are impermissible taxes or permissible fees was developed by the Supreme Court in Massachusetts v. United States, 435 U.S. 444, 98 S.Ct. 1153, 55 L.Ed.2d 403 (1978). Substituting the language in that case so as to make it appropriate in the present action, the test enunciated by the Massachusetts Court provides that:
[The Federal Government] can have no constitutional objection to a revenue measure that satisfies the three-prong test of Evansville-Vanderburgh Airport Authority v. Delta Airlines, Inc., [405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972)].... So long as the charges do not discriminate against [Federal] functions, are based on a fair approximation of use of the system, and are structured to produce revenues that will not exceed the total cost to the [State] Government of the benefits to be supplied, there can be no substantial basis for a claim that the [State] Government will be using its taxing powers to control, unduly interfere with, or destroy [the United States'] ability to perform essential services.
Massachusetts, 435 U.S. at 466-67, 98 S.Ct. at 1167, 55 L.Ed.2d 403.
Both parties concede that the charges assessed by EnCon meet the first prong of the Massachusetts test, in that there is no evidence of any discrimination on the part of the NYDEC concerning enforcement of these regulations.[10]
The defendant claims, however, that there is clearly a violation of the second aspect of this test. It notes that the method utilized by the plaintiff in assessing the fees is based on the size or quantity of an entity's operations, and not upon the services afforded the facilities by EnCon. The United States claims that these charges are therefore presumptively invalid, citing Nat'l Cable Television Ass'n v. F.C.C., 554 F.2d 1094, 1108 (D.C.Cir.1976); Electronic Industries Ass'n v. F.C.C., 554 F.2d 1109, 1114-15 (D.C.Cir.1976) and Capital Cities Communications, Inc. v. F.C.C., 554 F.2d 1135, 1138 (D.C.Cir.1976). The defendant also notes that in every year between 1983 and 1989, total water and waste regulatory charges exceeded the specific services provided to the subject federal facilities by the NYDEC. Over this seven year period, total water regulatory assessments exceeded the dollar value of EnCon services by a three to one ratio ($229,913.69 vs. $73,926.00), and total waste regulatory charges exceeded EnCon's actual services by a ratio of approximately nine to one ($1,163,591.58 vs. $126,792.13). The United States claims that the plaintiff's failure to correlate the charges assessed against specific federal facilities to the cost of services rendered by EnCon, as well as plaintiff's failure to commensurately increase services to such facilities in light of the substantial increases in assessed charges against them demonstrates that the fees are not based upon a fair approximation of the federal government's use of the system provided by New York, but are rather impermissible tax-like exactions.
However, the State argues, and this court agrees, that the United States has misinterpreted and incorrectly applied the second portion of this test with respect to the regulatory charges at issue.
The Massachusetts Court made clear that the relevant inquiry regarding the second prong is not whether the charges assessed by a State exceed the specific services rendered to a facility by the government. Rather, this prong relates to the overall benefits a facility receives from the government's services. In fact, the Supreme Court noted that this portion of the test is not failed even when a particular entity receives no specific services *100 from the government at all. Thus, it held that:
[N]ot all aircraft make equal use of the federal navigational facilities or of the airports that have been planned or constructed with federal assistance. But the present scheme nevertheless is a fair approximation of the cost of the benefits each aircraft receives. Every aircraft that flies in the navigable airspace of the United States has available to it the navigational assistance and other special services supplied by the United States. And even those aircraft, if there are any, that have never received specific services from the National Government benefit from them in the sense that the services are available for their use if needed and in that the provision of the services makes the airways safer to all users.

Massachusetts, 435 U.S. at 468, 98 S.Ct. at 1167-68, 55 L.Ed.2d 403 (emphasis supplied).
Thus, the assessed charges may be a fair approximation of the cost of the benefits received by the United States in the present case even though such fees are greater than the dollar value of the specific services provided to the ten facilities by the NYDEC. Every facility that operates in the State of New York has available to it the assistance and other special services supplied by the State of New York relating to the protection of the environment. The benefits received by the United States and its facilities concerning the environmental programs offered by New York are not limited to the specific services rendered by the NYDEC to the subject facilities. Rather, the federal government also benefits from EnCon's services because the NYDEC's programs and services are available for the United States' use if the same are needed by it in the future.
In support of its motion for summary judgment, the United States has only submitted evidence which indicates that the dollar value of the specific services received by the subject entities is less than the charges assessed by the NYDEC concerning these facilities. There is no evidence before the court as to the value of the overall benefits the facilities receive in light of the programs and services made available to them by EnCon should the need for such assistance ever arise. Consequently, at the present time, this court cannot rule, as a matter of law, that the fees charged by the NYDEC do not fairly approximate the overall benefits received by the subject entities. Therefore, the defendant has failed to establish that the subject charges meet the second prong of the Massachusetts test.[11]
With respect to the third factor set forth by the Court in Massachusetts, the United States claims that the State of New York has used the money received from these regulatory charges in an improper manner, and that this further demonstrates that the fees charged by EnCon are tax-like exactions. Specifically, the defendant notes that from 1983 through 1988, all air and water regulatory charges were deposited into the State's general revenue fund. In 1989, such fees were placed by the State into a special environmental enforcement fund established by New York. All waste regulatory assessments received by the State were deposited into New York's general revenue fund in 1983 and 1984. From 1985 through 1988, half of these fees were deposited into the general fund, with the other half being placed in a special hazardous waste remedial fund. In 1989, the State began depositing half of the waste regulatory charges into the State's environmental superfund, while depositing the balance in the special enforcement fund of the State.[12] The United States claims that proof that the State has commingled receipts from these regulatory charges with the State's general revenue fund, the superfund and New York's environmental enforcement *101 fund further supports its contention that the waste and water regulatory charges assessed against the United States are in reality impermissible tax-like exactions for which the United States is not liable to EnCon.
However, as noted by the plaintiff, the final requirement regarding the three-part test developed by the Court in Massachusetts merely provides that the fee schedule developed by a government may not be structured in a manner such that the revenues received by such charges will exceed the total cost to the government of the benefits to be supplied.[13] There is no requirement that courts must inquire into the manner in which a government uses the revenue obtained by such assessments in determining whether such charges are impermissible taxes rather than permissible fees.
In the present case, it is clear that the New York State legislature has expressly declared that the revenues established for the air, water and waste programs the State has developed are to be less than each program's respective expenditures.[14] The annual reports submitted by New York in support of its motion for summary judgment demonstrate that the assessed charges for the periods 1983 through 1989 are substantially lower than the actual outlays paid by the State for each of these programs.[15] Thus, the charges at issue in the present action merely reimburse the State for a portion of its outlays for each program. The receipts from these regulatory fees have clearly not been designed to, and indeed such charges do not in practice, exceed the cost to the State of providing the environmental programs offered by the NYDEC. The manner in which the State determines to utilize such revenues does not alter this fact. Accordingly the plaintiff, not the defendant, has demonstrated that it meets the third prong of this test.
In sum, the State has met two of the three criteria set forth by the Supreme Court in Massachusetts for purposes of establishing that the regulatory charges at issue in the present proceeding are permissible fees. However, at the present time, the court cannot find that the assessed charges are necessarily based upon a fair approximation of the federal government's use of the system provided by EnCon. Therefore, this court cannot hold, as a matter of law, that the assessed charges are either permissible fees or impermissible taxes under the test provided by the Supreme Court in Massachusetts, and the court must deny both parties' motions for summary judgment on their theories regarding the application of the Massachusetts test to the facts presently before this court. However, the United States will still be entitled to summary judgment dismissing plaintiff's complaint, and directing EnCon to reimburse the United States for the amount the defendant has already paid the NYDEC, if this court determines that the assessed charges are unreasonable as a matter of law.

(iii) Are the regulatory charges unreasonable as a matter of law?
The United States argues that the charges assessed against the federal entities are unreasonable both as to use and amount. It notes that New York previously deposited the receipts from these charges in the State's general fund, and more recently into the State's special enforcement fund and New York's superfund. With respect to the amount collected *102 by EnCon, the defendant first claims that the fees are presumptively invalid because such charges are based upon the size or quantity of the entity's operations, and not upon the particularized services afforded the subject facilities. The United States also contends that proof that the water and waste regulatory fees assessed against the facilities exceeded total services to such entities by factors of three to one and nine to one respectively demonstrates conclusively that the subject charges are unreasonable as a matter of law.[16]
However, the fact that the State deposited the revenues from these regulatory charges in New York's general or special enforcement funds, or the State's superfund, does not make such charges unreasonable per se. New York has demonstrated that the revenues from these charges are substantially lower than the actual outlays paid by the State for each of the programs. Merely because the State chose to deposit the receipts from such assessments in different funds is not grounds for holding as a matter of law that these charges are unreasonable. The defendant's motion for summary judgment likewise cannot be granted on its theory that the method utilized by New York in ascertaining a particular facility's regulatory charge is presumptively invalid because such a fee is based upon an entity's size and/or extent of operation. In all three of the cases cited by the defendant in support of this proposition, the Court of Appeals for the District of Columbia specifically noted that charges based on the size or quantity of an entity's operations may well be valid if their exists a reasonable relationship between the actual cost of rendering the service to such entity and the fee charged. See Electronic Ass'n, supra, 554 F.2d at 1115 (charges must bear "a reasonable relationship to the actual cost of rendering the service"); Capital Cities, supra, 554 F.2d at 1138 (the standard "requires the fee assessed to bear a reasonable relationship to the cost of the services rendered to identifiable recipients") (emphasis in original); Nat'l Cable Television Ass'n, supra, 554 F.2d at 1108 ("the agency must in all cases demonstrate a `necessary, natural, or ... probable correspondence between the sums to be paid ... and ... the character or extent of the services [rendered].'"). Thus, this court must likewise determine whether there is a reasonable relationship between the assessed charges and the services provided by EnCon.
The mere fact that the dollar value of the specific services rendered to the subject facilities is less than the regulatory fees charged by the plaintiff is not dispositive of the issue of whether such fees are unreasonable. The federal entities also benefit from the NYDEC's services because such programs and services are available for the defendant's use if they are needed in the future and provide benefits to all users statewide. There has been no evidence submitted by either party which compares the value of the overall benefits received by the defendant concerning these programs and services to the total cost to the State of providing the same to the subject federal facilities. Therefore, this court cannot hold that the charges assessed against the entities by the State are unreasonable  or reasonable  as a matter of law, and accordingly must deny both parties' motions for summary judgment on the issue of the reasonableness of the assessed regulatory charges.[17]

*103 (d) The statute of limitations as a bar to portions of plaintiff's claims for regulatory charges.

In its answer to plaintiff's complaint, in addition to contesting the validity of the State's water and waste regulatory charges, the United States also originally challenged air regulatory charges imposed by New York since April of 1983. However, in its memorandum submitted in support of its motion for summary judgment, the United States acknowledged limited liability on the NYDEC's claim for certain unpaid air regulatory charges assessed against the defendant, and also stated that it was withdrawing its claim for a refund of the air regulatory charges it had already paid to the NYDEC.[18] However, this concession came with two caveats. First, the United States claims that it cannot be held liable for charges assessed against it for the years 1983 through 1985 because these sums are barred by New York's three year statute of limitations regarding "actions to recover upon a liability, penalty or forfeiture created or imposed by statute." New York Civil Practice Law and Rules ("NYCPLR"), § 214(2). Second, the defendant alleges that it is not liable for any prejudgment interest concerning those charges which it has now agreed to pay the NYDEC. It claims that sovereign immunity precludes the awarding of prejudgment interest against the United States, and that congressional consent to an award of such interest must be separate from a general waiver of immunity to suit.[19]
EnCon contends that because this complaint seeks injunctive relief, i.e., judgment enjoining the defendant from withholding payment of the regulatory assessments, "[t]he limitations period for [this action] is the six period under CPLR § 213."[20] It also argues that the United States is liable not only for the fees previously assessed against it but not yet paid, but also for prejudgment interest which has accrued on the amount the plaintiff claims is owed by the defendant. EnCon argues that "the fee requirements, including the interest component, are requirements with which federal facilities must comply under CAA § 118, CWA § 313, and RCRA § 6001."[21]

(i) The statute of limitations.
The consolidated cases presently before the court may fairly be read to be actions seeking injunctive, declaratory and other equitable relief, rather than actions at law.[22] However, it is beyond cavil that, in applying the statute of limitations, courts must look to the essence of the *104 claim and the grounds upon which it is based, and not merely to the form in which a plaintiff may have artfully plead such a claim. Green Bus Lines, Inc. v. General Motors Corp., 169 A.D.2d 758, 565 N.Y.S.2d 124, 125 (2d Dep't 1991) ("[i]n applying the Statute of Limitations, courts must look to the essence of the claim, and not the form in which it is pleaded") (citations omitted); Bryden v. Wilson Memorial Hosp., 136 A.D.2d 843, 523 N.Y.S.2d 686, 687 (3rd Dep't 1988) ("[i]t is the gravamen or essence of the cause of action which is considered in determining the applicable statute of limitations") (citations omitted); Trott v. Merit Dep't Store, 106 A.D.2d 158, 484 N.Y.S.2d 827, 829 (1st Dep't 1985) ("[f]orm should not be exalted over substance and it is the reality and essence of the cause of action that is controlling" for purposes of determining the appropriate time limitation) (citation omitted); Connetquot Central School Dist. v. Greenport, 100 A.D.2d 923, 474 N.Y.S.2d 840, 841 (2d Dep't 1984) ("the gravamen or essence of a cause of action and not merely the name plaintiff attaches to it determines applicable period of limitations") (citations omitted); McCarthy v. Bristol Laboratories etc., 86 A.D.2d 279, 449 N.Y.S.2d 280, 283 (2d Dep't 1982) ("[i]n determining the applicable Statute of Limitations, the gravamen or essence of the action is examined, not merely is nomenclature") (citations omitted); Dolmetta v. Uintah Nat'l Corp., 712 F.2d 15, 19 (2d Cir.1983) ("[w]hen applying a statute of limitations, courts look at essence of the stated claim and not the label by which a plaintiff chooses to identify it") (citation omitted).
The plaintiff's action has been brought under Article 72 of the NYECL.[23] This statute has created a liability that did not exist at common law, and would not exist at all but for the statute. Thus, it is "an action to recover upon a liability, penalty or forfeiture created or imposed by statute", and the governing statute of limitations is accordingly provided in NYCPLR § 214(2). This is true even though plaintiff's claim seeks equitable relief, for since the substance of the claim underlying this lawsuit is a statutory cause of action, the governing statute of limitations is the three year period provided by NYCPLR § 214(2). See, e.g., Stettine v. County of Suffolk, 105 A.D.2d 109, 482 N.Y.S.2d 818, 822 (2d Dep't 1984) (statutory causes of action are subject to three year statute of limitation even though claim seeks equitable relief), aff'd in mem. 66 N.Y.2d 354, 497 N.Y.S.2d 329, 488 N.E.2d 75 (Ct.App.1985).
Accordingly, any claims brought by the NYDEC for regulatory charges assessed prior to January 18, 1986 are barred by the three year statute of limitations governing actions brought under Article 72 of the NYECL  a statutory cause of action  and defendant's motion for summary judgment dismissing that portion of plaintiff's complaint seeking such charges must be granted.[24]

(ii) Prejudgment interest.
The only evidence proffered by EnCon in support of its contention that the United States is liable for the interest charges assessed against it pursuant to NYECL § 72-0201(6) rests on the erroneous assumption that interest charges are other "requirements" with which the United States must comply under the CWA and the RCRA. However, this court has already noted that, as used in these statutes, the word "requirements" only relates to state pollution standards that a State might impose as part the State's environmental programs. Thus, the prejudgment interest sought by EnCon as part of its action against the United States is simply not a "requirement" with which the defendant must comply under these statutes.
In Library of Congress v. Shaw, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 *105 (1986), the Supreme Court specifically held that waivers of sovereign immunity with respect to interest awards must be clearly expressed by Congress in addition to any general waivers of immunity from actions. Thus, the Court held:
In the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award. This requirement of a separate waiver reflects the historical view that interest is an element of damages separate from damages on the substantive claim.
Shaw, 478 U.S. at 314, 106 S.Ct. at 2961, 92 L.Ed.2d 250. The Court continued by noting that:
In analyzing whether Congress has waived the immunity of the United States, we must construe waivers strictly in favor of the sovereign, see McMahon v. United States, 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951), and not enlarge the waiver "`beyond what the language requires,'" Ruckelshaus v. Sierra Club, 463 U.S. 680, 685-86, 103 S.Ct. 3274, 3278, 77 L.Ed.2d 938 (1983), quoting Eastern Transportation Co. v. United States, 272 U.S. 675, 686, 47 S.Ct. 289, 291, 71 L.Ed. 472 (1927). The no-interest rule provides an added gloss of strictness upon these usual rules.
"[T]here can be no consent by implication or by use of ambiguous language. Nor can an intent on the part of the framers of a statute or contract to permit the recovery of interest suffice where the intent in not translated into affirmative statutory or contractual terms. The consent necessary to waive the traditional immunity must be express, and it must be strictly construed." United States v. N.Y. Rayon Importing Co., 329 U.S. 654, 659, 67 S.Ct. 601, 604, 91 L.Ed. 577 (1947).
When Congress has intended to waive the United States' immunity with respect to interest, it has done so expressly; thus waivers of sovereign immunity to suit must be read against the backdrop of the no-interest rule.
Shaw, 478 U.S. at 318, 106 S.Ct. at 2963-64, 92 L.Ed.2d 250 (footnote omitted).
The CWA, CAA and the RCRA do not contain clear and unambiguous waivers of the United States' immunity from prejudgment interest awards separate and apart from the limited waiver of immunity from suit provided by these statutes. There is no language in these statutes which states that the United States is liable for prejudgment interest. Thus, the defendant is immune from plaintiff's claim for the same, and the United States is therefore entitled to summary judgment dismissing that portion of plaintiff's complaint which seeks such an award.

CONCLUSION
The United States' motion for summary judgment is granted with respect to plaintiff's claims for the balance allegedly due it regarding all regulatory charges assessed against the defendant for the years 1983 through 1985. The defendant's motion is also granted insofar as plaintiff's complaint seeks prejudgment interest concerning the regulatory charges assessed by the State of New York against the subject entities since January, 1986. Defendant's motion is denied in all other respects. Plaintiff's motion for summary judgment is granted with respect to the air regulatory charges assessed against the United States since January, 1986, exclusive of prejudgment interest, and its motion is denied in all other respects.
IT IS SO ORDERED.
NOTES
[1] The ten federal facilities involved in the present case are the following: two Air Force bases (the Plattsburgh Air Force Base and Griffiss Air Force Base), five Army facilities (at Fort Drum, the Military Academy at West Point, the Defense National Stockpile Center in Scotia, the Seneca Army Depot in Romulus and the Watervliet Arsenal), the Coast Guard Support Center on Governor's Island and two Department of Energy laboratories (the Knolls Atomic Power Laboratory and the Brookhaven National Laboratory in Upton).
[2] See stipulation of undisputed facts, signed by both parties on 12/20/90 ("Stipulation"), ¶ 6.
[3] For reasons which are more fully discussed in section (d), infra, the United States has withdrawn its counterclaim concerning a portion of the refund originally sought in its answer to the plaintiff's complaint. Additionally, it acknowledges limited liability to the NYDEC concerning certain air regulatory charges sought by the plaintiff for the years 1986 through 1989. See defendant's memorandum of law in support of its motion for summary judgment ("Def. Mem.") at 30-31 n. 8. Thus, the bulk of this court's decision will be limited to a discussion about the CWA and the RCRA.
[4] Plaintiff's memorandum of law in support of its motion for summary judgment ("Pl. Mem.") at 14.
[5] Id. at 15.
[6] Def.Mem. at 30.
[7] Pl.Mem. at 24.
[8] This environmental statute, which specifically mentions both "requirements" and "taxes", provides, in pertinent part, that:

Low-level radioactive waste owned or generated by the Federal Government that is disposed of at a regional disposal facility or non-Federal disposal facility within a State that is not a member of a [regional] compact [for the disposal of low-level radioactive waste] shall be subject to the same conditions, regulations, requirements, fees, taxes, and surcharges imposed by the compact commission, and by the State in which the facility is located, in the same manner and to the same extent as any low-level radioactive waste not generated by the Federal Government (emphasis added).
42 U.S.C. § 2021d(b)(1)(B).
[9] Both the CWA and the RCRA expressly provide that the United States shall pay reasonable service charges which are assessed against it pursuant to State programs developed to control and abate water pollution (33 U.S.C. § 1323), and solid or hazardous waste disposal (42 U.S.C. § 6961).
[10] Stipulation, ¶ 10.
[11] The plaintiff contends that resolution of the issue of whether the NYDEC has satisfied the second element of this test involves questions of fact. See Plaintiff's Reply Memorandum ("Pl. Reply") at 13-14 n. 6.
[12] Stipulation, ¶¶ 16-17.
[13] In Massachusetts, the Court upheld the revenue measure at issue in that case because Congress had enacted the revenue act anticipating that the user fees imposed would be insufficient to cover annual federal expenditures for the program. The actual experience of the federal government during the first years of operation demonstrated that "the revenues fell far short of covering the annual ... outlays." Massachusetts, 435 U.S. at 469, 98 S.Ct. at 1168, 55 L.Ed.2d 403.
[14] In discussing the policy behind these charges, the State legislature provided that "[t]he legislature further declares that regulatory fees are an appropriate mechanism to pay a portion of the costs of the department's regulatory functions and programs...." See NYECL § 72-0101 (emphasis added).
[15] Pl.Mem., Exhibits A-G.
[16] Def.Mem. at 32-34.
[17] The United States also claims that the waste regulatory charges paid by it in 1983 and 1984 are unreasonable because the Third Department, Appellate Division, in Al Tech Specialty Steel Corp. v. New York State Dep't of Tax. & Fin., 130 A.D.2d 84, 518 N.Y.S.2d 62 (3rd Dep't 1987), appeal denied 70 N.Y.2d 612, 524 N.Y.S.2d 431, 519 N.E.2d 342 (Ct.App.1987), determined that the NYDEC hazardous waste regulatory charges were not validly promulgated prior to July, 1985. The defendant alleges that the Third Department's ruling demonstrates conclusively that the waste regulatory fees paid by the defendant in 1983 and 1984 were "illegally exacted" by the State, and that therefore the United States is entitled to a refund of the amount paid to EnCon relating to these assessments. However, the case cited by the defendant in support of this contention, National Ass'n of Broadcasters v. F.C.C., 554 F.2d 1118 (D.C.Cir.1976), provides no support for this proposition. In order for the United States to be retroactively afforded the benefit of the invalidation of the waste regulatory charges, it must prove, inter alia, that New York State did not justifiably rely on the validity of these regulations at the time it assessed the subject charges. Id. at 1132 ("[b]y far the most important consideration of the four [factors to consider] is the extent of justifiable reliance [upon the rejected rule].")

However, the court in Al Tech Specialty Steel Corp. found that the substance of New York's waste regulations was valid, and that the same were only invalid because of certain procedural defects concerning the promulgation of such regulations. In the present case, neither party submitted any evidence to the court concerning the issue of the State's reliance upon these regulations at the relevant time period. Thus, based upon the evidence currently before it, this court cannot rule as a matter of law that the State of New York was not justified in relying on the validity of these regulations at the time it assessed the waste regulatory charges against the defendant.
[18] Def.Mem. at 30-31 n. 8. The defendant noted that it was withdrawing its claim for a refund, and admitting limited liability for EnCon's charges for the years 1986 through 1989, because it contended that these particular air regulatory charges met all three prongs of the Massachusetts test and were therefore permissible fees for which it was liable. Id.
[19] Def.Mem. at 31 n. 8.
[20] Pl.Reply at 16-17.
[21] Pl.Mem. at 27.
[22] The wherefore clauses in plaintiff's complaint seek, in substance, an order (i) declaring that the defendants are required to pay the fee charges described in the complaint, (ii) declaring that the defendants must pay prejudgment interest relating to these charges, (iii) enjoining the defendants from withholding payment of such charges and interest in the future, (iv) awarding costs and (v) granting such other relief as the Court deems just and proper. See Complaint at 10-11.
[23] Complaint, ¶ 2.
[24] For the reasons hereinbefore described, the defendant is not entitled to summary judgment awarding it a refund concerning those water and waste regulatory charges already paid to the NYDEC for the years 1983 through 1985, for such charges may have been both reasonable and a fair approximation of the cost of the benefits afforded the United States by EnCon. See Massachusetts, supra.