■ RACHEL WARNKE, Respondent-Appellant, v WARNER-LAMBERT COMPANY, Appellant-Respondent. [799 NYS2d 666]—

Carpinello, J. (1) Appeal from an order of the Supreme Court (Caruso, J.), entered March 24, 2004 in Schenectady County, which partially denied defendant's motion for summary judgment dismissing the complaint, (2) appeal from a judgment of said court, entered June 2, 2004 in Schenectady County, upon a verdict rendered in favor of plaintiff, and (3) cross appeals from an order of said court, entered September 27, 2004 in Schenectady County, which, inter alia, granted defendant's motion to set aside the verdict as to damages and ordered a new trial on said issue.

Plaintiff alleges that, on April 21, 1999, she cut her leg while shaving with a Schick Personal Touch razor which was designed and manufactured by defendant. According to plaintiff, a portion of the cap of the razor's replaceable cartridge broke off, as did two of the four posts securing the razor blades to the cartridge cap and base. This caused the exposed blades to come out of alignment, resulting in a deep laceration to plaintiff's calf

which required, among other things, 27 sutures to close the wound. Plaintiff commenced this products liability action alleging both a design defect and a manufacturing defect. Following joinder of issue, defendant moved for summary judgment dismissing the complaint. By order entered March 24, 2004, Supreme Court granted that motion to the extent of dismissing the cause of action asserting a manufacturing defect. Defendant filed a notice of appeal from that order.

Thereafter, a jury trial was conducted with respect to the alleged design defect claim resulting in a verdict for plaintiff in the amount of $40,000 for past pain and suffering, $60,000 for future pain and suffering and $2,000 for future medical expenses.[1] Supreme Court granted defendant's motion to set aside the verdict to the extent of ordering a new trial on the issue of damages unless plaintiff consented to reduced awards in the amount of $15,000 for past pain and suffering and $25,000 for future pain and suffering. Defendant also appeals from the judgment entered following the jury verdict and the parties cross-appeal from the court's order in response to defendant's postverdict motion.

Initially, defendant contends that Supreme Court erred in denying its summary judgment motion seeking the dismissal of the design defect cause of action on the basis that plaintiff did not set forth a prima facie case.[2] We conclude, however, that the motion was properly denied. "In order to establish a prima facie case in strict products liability for design defects, the plaintiff must show that the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing [the] plaintiff's injury" (*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 107 [1983]). The standard for determining when a product is not reasonably safe for its intended use requires an appraisal of whether, "if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in

---

**1.** The parties also previously stipulated to an award of $1,080 for past medical expenses.

**2.** We note that defendant's right to take a direct appeal from the intermediate order denying its summary judgment motion terminated upon entry of the final judgment herein and, accordingly, the appeal from that order must be dismissed (*see Dolan v Jaeger*, 285 AD2d 844, 846 n 2 [2001]). While plaintiff disputes defendant's right to raise this issue on this appeal, an appeal from a final judgment brings up for review all interlocutory orders (*see* CPLR 5501 [a] [1]), a fact that this Court specifically noted in determining a prior motion involving these parties.

that manner" (*id.* at 108; *see Pigliavento v Tyler Equip. Corp.*, 248 AD2d 840, 841 [1998], *lv dismissed and denied* 92 NY2d 868 [1998]).

Here, assuming arguendo that defendant's proof was sufficient to meet its initial burden on a summary judgment motion (*see* CPLR 3212 [b]), we find that the expert proof offered by plaintiff in opposition to defendant's motion, namely, the sworn affidavit from engineer Vito Colangelo, was sufficient to create issues of fact. Colangelo opined, among other things, that the subject razor cartridge was defective in that it was made of "a polystyrene material which is brittle and has a low impact resistance" even though "at least as far back as 1995, there was a feasible alternative design available which would involve using a K-resin polymer which has a substantially higher rubber content than a polystyrene and therefore has a much greater impact resistance." According to Colangelo, "two of the pins connecting the cap blade and cap seat on the cartridge . . . were damaged during shipping from the factory and the remainder of the pins which fractured became broken during [plaintiff's] use of the cartridge," thus causing her injuries. Inasmuch as this and other proof raised triable issues as to defendant's alleged liability, summary judgment was properly denied with respect to the design defect cause of action.

We now turn to defendant's various challenges to the jury verdict as to liability. Defendant contends that plaintiff did not present sufficient evidence that there was a feasible and safer alternative design. At trial, Colangelo testified that he focused on a comparison between the materials which were or may have actually been used in the subject razor cartridge (medium impact polystyrene and ABS type plastic) and the material which he believed to be a reasonable, safer and economically feasible alternate option available at the time that the subject razor was produced (K-resin). He opined that, while the subject razor cartridge was composed of materials which had a greater propensity for fracturing, there was an available, economically-feasible alternative design which was safer, i.e., a design that used a K-resin polymer with a higher impact resistence. This proof, along with Colangelo's testimony explaining his opinion that the cost of the alternative design would not be a deterrent, was sufficient to support plaintiff's case. As for defendant's further argument that plaintiff did not present sufficient evidence establishing proximate cause, we cannot agree. Colangelo's testimony, along with, for example, that of plaintiff and her plastic surgeon, sufficiently set forth a theory of causation establishing a correlation between the design defect and

plaintiff's injuries (*see Abar v Freightliner Corp.*, 208 AD2d 999, 1001 [1994]).

Next, we address whether the verdict as to liability should be set aside as against the weight of the evidence. Notably, "[a]s in most strict products liability cases, the trial herein was essentially a battle of experts" (*id.* at 1001). Inasmuch "[a]s we accord due deference to the jury's resolution of the experts' conflicting testimony based upon its opportunity to observe and hear the witnesses and weigh their testimony, we cannot say that the jury could not have reached its verdict by any fair interpretation of the evidence" (*id.*; *see Brown v Dragoon*, 11 AD3d 834, 836 [2004]; *McEachron v State Farm Ins. Co.*, 7 AD3d 929, 930 [2004]). Thus, it is not dispositive that, as recognized by Supreme Court, certain of the assertions by plaintiff's expert were undermined to some extent by defendant's expert. Nevertheless, even in cases where there is evidence which could support a conclusion different from that of a jury, its verdict will still be accorded great deference and respect so long as there is credible evidence to support its interpretation (*see Cocca v Conway*, 283 AD2d 787, 788-789 [2001], *lv denied* 96 NY2d 721 [2001]; *Howe v Wilkinson*, 275 AD2d 876, 876 [2000]). Inasmuch as plaintiff herein satisfactorily produced credible evidence that the subject razor cartridge was defectively designed and that said defect proximately caused her injuries, we do not find the verdict to be against the weight of the evidence.

Lastly, plaintiff contends that Supreme Court abused its discretion in overturning the jury's verdict as to damages. Generally, a jury's assessment as to damages is accorded great deference unless it deviates materially from that which would be considered reasonable compensation (*see Johnson v Grant*, 3 AD3d 720, 722 [2004]; *Lolik v Big V Supermarkets*, 266 AD2d 759, 760 [1999]). Nevertheless, the trial court retains the discretion to set aside a verdict under appropriate circumstances (*see Moxley v Givens*, 255 AD2d 632, 633 [1998]). Here, given Supreme Court's superior opportunity to evaluate the proof and the credibility of the witnesses (*see Santucci v Govel Welding*, 168 AD2d 845, 846 [1990]), we cannot say that the court abused its discretion in its conclusion that the jury verdict should be reduced under the circumstances.

The remaining arguments of the parties, including defendant's contention that Supreme Court erred in admitting evidence of past consumer complaints regarding incidents involving the exact type of razor used by plaintiff (*see Weidemann v Knights of Columbus, St. Margaret Mary's Council No. 6758*, 199 AD2d 838, 839 [1993]; *see also Gelpi v 37th Ave. Realty Corp.*, 281

AD2d 392, 392 [2001]), have been examined and found to be unpersuasive.

Cardona, P.J., Peters and Mugglin, JJ., concur. Ordered that the appeal from the order entered March 24, 2004 is dismissed, without costs. Ordered that the judgment entered June 2, 2004 and the order entered September 27, 2004 are affirmed, without costs.