■ CAROLE MADDEN, Respondent, v JEAN A. DAKE et al., Appellants. [819 NYS2d 121]—

Spain, J. Appeal from a judgment of the Supreme Court (Aulisi, J.), entered February 7, 2005 in Fulton County, upon a verdict rendered in favor of plaintiff.

Plaintiff, while operating a motor vehicle, was involved in an accident on December 11, 2001. As she was coming to a stop at an intersection, a school bus owned by defendant Gloversville Enlarged School District and operated by defendant Jean A. Dake crossed into plaintiff's lane while turning a corner, striking the driver's side of plaintiff's vehicle. Plaintiff was transported to the emergency room complaining of pain to her left side and, upon examination, her left thigh and knee were tender to palpation. X rays disclosed no fractures. She was diagnosed, as relevant here,[1] with left knee strain and a left thigh contusion. She returned to the emergency department several times over the days following the accident, complaining of increased left knee pain. Swelling was noted but X rays were again normal.

Plaintiff began treatment with Gerald Ortiz, an orthopedic surgeon, on December 20, 2001, when observable swelling and a significant limitation in her range of motion were detected. Extended physical therapy was pursued and an MRI revealed

[1]. Although plaintiff raised claims in her bills of particular related to other injuries sustained in this accident, they had resolved and were not in issue on defendants' summary judgment motion. Also, plaintiff's 90/180-day claim was rejected by the jury after a trial and, thus, any issue related to the denial of defendants' motion with regard to that category is moot.

an anterior cruciate ligament (hereinafter ACL) strain, edema within the ACL sheath and an intrameniscal tear of the medial meniscus. Plaintiff's pain, stiffness, limited mobility and swelling continued and she saw little improvement from physical therapy; she also experienced snapping in her left knee and the knee gave way multiple times. Ortiz performed a diagnostic arthroscopy in April 2002, and diagnosed "external derangement of the left knee in the form of patellofemoral subluxation," i.e., movement of the knee cap out of alignment with the femur groove, which Ortiz opined caused her leg to give way and was attributable to this accident. Plaintiff's condition continued and a dynamic CT scan in December 2002 showed her left patella (knee cap) was lateralized (positioned to the side) more than the right patella and was also tilted, which Ortiz attributed to her recurrent patella subluxation. Ortiz performed surgery in March 2003, a Fulkerson osteotomy and lateral ligament release, in which he cut the bone where the patellar tendon attaches, realigned the knee and reattached the bone with screws, to reduce the stress on the patella from bending/straightening and its associated pain. Plaintiff saw some improvement in symptoms after surgery but continued to treat with Ortiz, and the swelling, limited mobility and weakness persisted. She remained totally disabled from her occupation as an intensive care nurse.

By February 2004, plaintiff had atrophy of her lower left extremity and swelling, and X rays revealed that the surgical screws inserted had loosened, necessitating surgical removal and another diagnostic arthroscopy in which hypertrophic (swollen) synovial tissue in her patellofemoral joint was dissected. Ortiz ultimately concluded that plaintiff's left knee pain, weakness and limited mobility were chronic, permanent and significant and, while surgery had helped, it had not fully corrected plaintiff's injuries; no further surgery was recommended.

Plaintiff commenced this action against defendants in December 2002, alleging that she had sustained serious injuries under three categories: permanent consequential limitation of use of her left knee and left lower extremity; significant limitation of use of the motor functions, muscle and nerve systems of the left lower extremity and knee; and the 90/180-day rubric (*see* Insurance Law § 5102 [d]). On the eve of trial, defendants moved for summary judgment, which Supreme Court denied in a written order and decision.

Following a trial, the jury returned a verdict in plaintiff's favor, finding that she had sustained serious injuries under both the permanent consequential and significant limitation of use

categories, but not under the 90/180-day category. Plaintiff was ultimately awarded damages ($763,350) for past and future lost earnings, medical expenses and pain and suffering. Defendants now appeal, arguing that they should have been awarded summary judgment[2] and raising challenges to several trial rulings. We affirm in all respects.

Initially, we reject defendants' contention that Supreme Court erred in denying their summary judgment motion seeking dismissal of plaintiff's complaint. As the proponent of the motion, defendants bore the initial burden of establishing that plaintiff did not sustain a serious injury within either of the two limitation of use categories, permanent consequential or significant (see Gaddy v Eyler, 79 NY2d 955, 956 [1992]). Defendants offered medical reports and an affidavit from Thomas Eagan, an orthopedic surgeon, who opined, based upon a review of plaintiff's medical records and reports and his examination of her in November 2003, that she had not sustained any serious injury as a result of this accident but, rather, only an abrasion and contusion to her left knee. Eagan concluded that plaintiff's pain complaints and giving way of her left knee "are not supported by any objective findings," noting the absence of fractures or dislocation, and that the causally related ACL strain had healed at arthroscopy, which revealed no evidence of internal knee injury. Eagan submitted that plaintiff had a preexisting tendency for patellar tilting and movement and ligament laxity (hyperextension) in both knees, which was exacerbated by other factors including her nursing duties. Eagan did not otherwise explain his conclusion that plaintiff's knee problems were attributable to a preexisting, underlying anatomical tendency. Also, Eagan conceded that this accident had aggravated—without quantification—plaintiff's underlying tendencies. He found, however, that Ortiz's surgery to reposition and stabilize plaintiff's patella had corrected the problem, and physical therapy had corrected the muscle atrophy; he detected no limitations upon her range of motion or subluxations during his exam.

---

**2.** Contrary to plaintiff's claims, defendants' appeal from the final judgment brings up for review all interlocutory orders, including the order denying defendants' summary judgment motion which has not previously been reviewed by this Court (see Warnke v Warner-Lambert Co., 21 AD3d 654, 655 n 2 [2005]; see also CPLR 5501 [a] [1]). The fact that defendants previously had separately appealed from the order (denying their summary judgment motion), and then withdrew that appeal, does not alter its reviewability now on the appeal from the final judgment. Indeed, defendants' right to separately take a direct appeal from that intermediate order would have terminated upon entry of the final judgment upon the jury verdict (see id.).

We find that defendants' proof did not address or specifically explain some of plaintiff's medical tests or diagnoses or their significance, or how her preexisting condition was ascertained or the extent to which it was aggravated by this accident. Most troubling, Eagan's November 2004 affidavit (and the independent medical examination addendum) in support of defendants' motion was almost a year after his exam of her, and did not address the significance of her May 2004 diagnostic arthroscopy, in which Ortiz removed screws, noted patellar subluxation and dissected synovial tissue near her patellofemoral joint. Thus, it is questionable whether defendants met their burden of demonstrating that plaintiff did not sustain either of the alleged serious injures but, in any event, plaintiff's proof in opposition was sufficient to defeat defendants' motion (*see Franchini v Palmieri*, 1 NY3d 536, 537 [2003]; *Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 353 [2002]; *cf. Adams v Pagano*, 1 AD3d 779 [2003]; *Hubert v Tripaldi*, 307 AD2d 692 [2003]).

Plaintiff offered Ortiz's December 2004 affirmation, and all of the medical records and reports as summarized above, which were based upon his prior surgeries and recent treatment and exam of plaintiff in which he observed swelling, stiffness, weakness, limping, atrophy, hyperextension and patellar subluxation. He opined that her recurrent patellar subluxation and attendant chronic knee pain were permanent, caused by this accident, and significantly limited her ability to engage in regular activity, including standing, bending or walking without pain, and rendered her unable to perform nonsedentary nursing duties. While Ortiz did not offer a numeric percentage of plaintiff's loss of range of motion in her left knee, his affirmation sufficiently provided a qualitative assessment of plaintiff's condition supported by objective evidence, including examination observations, MRIs, CT scans, diagnostic arthroscopies and arthroscopic surgery (*see Toure v Avis Rent A Car Sys., supra* at 350-351). Thus, defendants' motion was properly denied.

Moreover, we find no merit to defendants' claim, apparently raised for the first time on appeal, that Supreme Court erred in issuing a decision after the start of the trial on their eleventh-hour summary judgment motion.[3] While it is not clear when the note of issue was filed (*see* CPLR 3212 [a]; *see also Brill v City of New York*, 2 NY3d 648 [2004]), the court clearly based its

---

**3.** It appears that the motion for summary judgment (initiated by a notice of motion) was returnable on December 6, 2004, one week before the scheduled trial date of December 13, 2004. Notably, defendants' reply to plaintiff's response is dated December 13, 2004 and Supreme Court's written decision is dated December 16, 2004, the day before the last day of proof.

written decision on "the papers and proof submitted" on the motion (CPLR 3212 [b]), and there is no support for defendants' assertion that the court's ruling was influenced by the trial proceedings.

We are similarly unpersuaded by defendants' challenges to Supreme Court's trial rulings permitting certain expert testimony. To establish plaintiff's future economic losses attributable to her causally related permanent moderate disability, plaintiff—in addition to her own testimony and that of her treating physician—presented the testimony of a certified vocational rehabilitation expert, Marvin Reed, and that of an economist. Reed testified that his opinion was based upon plaintiff's medical and employment records, a structured interview with plaintiff, government publications and his extensive experience as a vocational rehabilitation counselor. He testified to plaintiff's functional limits attributable to her physical impairment, her qualified ability to work in a sedentary capacity as a nurse, her loss of and residual earning capacity and projected earnings based upon her expected work life, and her future anticipated medical expenses.

To the extent that Supreme Court overruled some of defendants' objections to aspects of Reed's testimony as lacking adequate foundation or based upon assumptions not supported by the record, we discern no abuse of discretion (*see Dufel v Green*, 84 NY2d 795, 797-798 [1995]; *Tassone v Mid-Valley Oil Co.*, 5 AD3d 931, 932 [2004], *lv denied* 3 NY3d 608 [2004]; *cf. Pascuzzi v CCI Cos.*, 292 AD2d 685, 685-687 [2002]). Reed's testimony did not exceed the scope of his expertise or endeavor to extrapolate his calculations to account for inflation or offer conclusions as to total losses sustained by plaintiff, leaving those calculations to the economist. His assessments were largely based upon materials in evidence, or reliant upon identified and professionally accepted outside sources, or derived from his own personal knowledge and considerable experience, subject to full cross-examination (*see Hambsch v New York City Tr. Auth.*, 63 NY2d 723, 725-726 [1984]; *Brown v County of Albany*, 271 AD2d 819, 820 [2000], *lv denied* 95 NY2d 767 [2000]). The court's determination that he was qualified to testify to these matters as an expert "will not be disturbed in the absence of serious mistake, an error of law or abuse of discretion" (*Aylesworth v Evans*, 225 AD2d 850, 851-852 [1996], citing *Werner v Sun Oil Co.*, 65 NY2d 839, 840 [1985]). Defendants' underlying criticism of Reed's reliance on his own experience in rendering opinions goes to its weight, not its admissibility (*see Hoagland v Kamp*, 155 AD2d 148, 152 [1990]). Indeed, the jury awarded signifi-

cantly less compensation for plaintiff's net losses (wages, benefits and future medical expenses) than Reed's testimony and the other testimony would have supported, indicating that the jury disregarded—as it was entitled to do—many of the disputed aspects of plaintiff's expert testimony based upon defendants' effective cross-examination (*see Prescott v LeBlanc*, 247 AD2d 802, 802 [1998]).

Next, in view of the consistent testimony and evidence adduced at trial that at the point of impact plaintiff's vehicle was approaching the stop sign but had not yet reached the stop line at this intersection, viewed most favorably to defendants, we find no error in Supreme Court's denial of defendants' request to charge the jury with regard to plaintiff's possible violation of Vehicle and Traffic Law § 1172 (*see* PJI 3d 2:80 [2006]; *see also Tyson v Brecher*, 212 AD2d 851, 851 [1995]; *Hardy v Sicuranza*, 133 AD2d 138, 139 [1987]; *cf. Sutton v Piasecki Trucking*, 59 NY2d 800 [1983]; *Beaumont v Smyth*, 16 AD3d 1106 [2005]; *Espinoza v Loor*, 299 AD2d 167 [2002]).

Finally, defendants take issue with Supreme Court's exclusion of a letter of explanation written to City Court by Dake, the driver of the bus, regarding this accident prior to her guilty plea to violating Vehicle and Traffic Law § 1160. We find no merit to this claim, in view of Dake's ability and opportunity to explain the reasons for her plea during her testimony at this trial (*see Kelley v Kronenberg*, 2 AD3d 1406, 1407 [2003]). Defendants' remaining claims do not warrant further discussion.

Mercure, J.P., Crew III, Mugglin and Kane, JJ., concur. Ordered that the judgment is affirmed, with costs.