MARY PUGH et al., Appellants, v FRANK V. DeSANTIS et al., Respondents. [830 NYS2d 823]—

Spain, J. Appeal from an order of the Supreme Court (Krogmann, J.), entered December 21, 2005 in Warren County, which granted defendants' motion for summary judgment dismissing the complaint.

In January 2003, while stopped in preparation to make a left turn, the vehicle driven by plaintiff Mary Pugh (hereinafter plaintiff) was struck from behind by a vehicle operated by defendant Frank V. DeSantis (hereinafter defendant). Plaintiff and her husband, derivatively, commenced this personal injury action alleging that plaintiff had sustained an Insurance Law § 5102 (d) serious injury as a result of the collision. Defendants moved for summary judgment dismissing the complaint and plaintiffs cross-moved for partial summary judgment on the issue of liability. Supreme Court granted defendants' motion and dismissed the complaint, prompting this appeal by plaintiffs.

Defendants made a prima facie showing that plaintiff suffered no serious injury as a result of this accident. A radiologist report dated the day after the accident noted normal vertebrae alignment with "[n]o fractures, dislocations or sublocations" and "[n]o acute post-traumatic abnormalities." A report authored by an orthopedic surgeon who examined plaintiff four months later—in May 2003—opined that plaintiff's complaints "are clearly an aggravation of a pre-existing symptomatic condition related to [a] 1986 motor vehicle accident [and] . . . the residual symptoms . . . are not incapacitating or substantiated by any objective findings which can be causally related to the claim." Orthopedist Robert Sellig examined plaintiff in December 2004 and found that cervical strain related to the 2003 accident had been "superimposed on a pre-existing degenerative disc disease at C5-6 . . . . The patient has a very mild partial disability and it is almost two years since her accident so I would say it is permanent." In addition, defendants relied upon physical therapy records indicating that by May 2003, plaintiff was at times "symptom free" or experiencing "minimal pain." Finally, defendants point out that plaintiff failed to submit medical prescriptions authorizing her to miss work for more than 38 days during the six-month period following the accident. This evidence is sufficient to shift the burden to plaintiffs to come forth with "competent medical proof supported by objective findings to raise a triable issue" as to whether plaintiff suffered any serious injury as defined by the statute (*Haddadnia v*

*Saville*, 29 AD3d 1211, 1211 [2006]; *see Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 350 [2002]).

Plaintiffs primarily rely on the affidavit of plaintiff's treating physician, internist Donald Merrihew. In response to the evidence that plaintiff's injuries flowed entirely from the earlier (1986) accident, Merrihew submitted an affirmation wherein he stated that he had treated plaintiff for the past eight years and she had never complained about a neck injury prior to the 2003 accident. With respect to establishing a current injury, Merrihew relied upon plaintiff's X rays which, in his opinion and that of Sellig, showed "some straightening" of the cervical spine. Merrihew opined that the straightening was caused by intense muscle spasm resulting from the 2003 collision. In an examination performed in February 2003, Merrihew noted a loss of range of motion of "fifty percent in flexing, extension, lateral rotation and abduction" and detected muscle spasms, most severe in her right upper trapezium. It is not entirely clear from Merrihew's affidavit, but it appears that he detected the spasms through palpation, providing some medically objective evidence of plaintiff's injury (*see Toure v Avis Rent A Car Sys., supra* at 357; *Martin v Fitzpatrick*, 19 AD3d 954, 956-957 [2005]).

Merrihew also expressed his familiarity with plaintiff's occupation as a tutor for a special needs child and her home and parenting responsibilities. He explained that plaintiff was unable to work or manage her household following the collision because the pain and limitation of range of motion caused by her muscle spasms made it impossible for her to physically control the special needs child, to remain in any one position for a prolonged period of time or to perform basic household tasks such as vacuuming, washing dishes, doing laundry, driving for long periods of time or shoveling snow. Merrihew also affirms that he kept plaintiff out of work until April 27, 2003* just over 90 days following the accident.

Merrihew continued to treat plaintiff and referred her to pain management specialists. With respect to the permanency of plaintiff's injury and the extent to which her injuries persist, Merrihew admits that her range of motion "has improved significantly since the first year after the motor vehicle accident," but concludes that "she does not have, nor will she have a full range of motion." He opines that plaintiff continues to suffer from severe limitation because—due to myofacial pain syndrome *stemming from her whiplash injury*—she cannot lift

---

* Although Merrihew's affidavit says April 27, 2005, it is clear from the surrounding text and other evidence of plaintiff's work history that he meant April 27, 2003.

over 10 pounds with her right hand and is unable to remain in any one position for a prolonged period of time or to expose her neck to significant strain—such as mowing the lawn—without running a risk of suffering from severe muscle spasm or headache. Merrihew's affirmation, however, does not quantify the extent of plaintiff's current limitations or provide the results of any recent objective medical data to corroborate his opinion that she remains significantly disabled.

Given this evidence, Supreme Court properly granted summary judgment to defendants on the "permanent consequential limitation of use of a body organ or member" and "significant limitation of use of a body function or system" categories of serious injury (*see* Insurance Law § 5102 [d]). To substantiate a claim under either of these categories, "the medical evidence submitted by plaintiff must contain objective, quantitative evidence with respect to diminished range of motion or a qualitative assessment comparing plaintiff's *present* limitations to the normal function, purpose and use of the affected body organ, member, function or system" (*John v Engel*, 2 AD3d 1027, 1029 [2003] [emphasis added]), and it is now "beyond cavil" that the demonstrated limitation must be more than "mild, minor or slight" (*Palmer v Moulton*, 16 AD3d 933, 935 [2005] [internal quotation marks and citations omitted]; *see Toure v Avis Rent A Car Sys., supra* at 350-351).

There is consensus among the medical providers involved in this litigation that plaintiff suffers from preexisting degenerative disk disease. The concession by defendants' experts that the 2003 accident caused an aggravation of this disease and/or of some preexisting injury related to the 1986 accident, and that the resulting disability is permanent, is qualified by their opinion that the extent of plaintiff's remaining disability is "very mild" and "not incapacitating." In response, plaintiffs did not provide any objective medical evidence of a current, significant injury. Merrihew's affirmation, while opining that plaintiff remains "severely limited in her ability to engage in physical activities," acknowledges that plaintiff has improved significantly and fails to quantify the limitations in her current range of motion or identify any objective medical evidence to support the existence or extent of the alleged persisting limitations (*see Simpson v Feyrer*, 27 AD3d 881, 883 [2006]; *Pianka v Pereira*, 24 AD3d 1084, 1085-1086 [2005]; *Jockimo v Abess*, 304 AD2d 999, 1000-1001 [2003]; *see also Gaddy v Eyler*, 79 NY2d 955, 957 [1992]).

We reach a different conclusion with respect to the 90/180-day category of serious physical injury (*see* Insurance Law

§ 5102 [d]). With respect to this category of serious injury, defendants' motion papers assert that plaintiff sustained no injury under this category as a result of the 2003 accident, that documentary evidence indicates that plaintiff was able to return to work and remain at work thereafter after April 7, 2003—less than 90 days after the accident—and that plaintiff's allegations that she could not work, play softball, go grocery shopping or ride roller coasters are insufficient, even if credited, to demonstrate a 90/180-day serious injury. However, the reports authored by defendants' experts conceding that the 2003 accident aggravated a preexisting condition, combined with Merrihew's assertion that plaintiff did not complain of any neck pain prior to the 2003 accident, present a question of fact as to whether and to what extent plaintiff's injuries stem from the 2003 accident (*see Madden v Dake*, 30 AD3d 932, 936 [2006]).

Further, in contrast to the documentary evidence of plaintiff's medically necessitated absence from work, Merrihew's affirmation states that plaintiff was not able to return to work at all until near the end of April 2003. Finally, plaintiff's affidavit submitted in response to defendants' motion indicates that, following the collision, she was unable to work for approximately three months, could not go grocery shopping for about six months, could not do laundry or cooking for approximately five months, had difficulty sitting to help her children with homework for approximately three months, could not attend her children's sporting and other activities for approximately three months, and remains unable to mow the lawn, lift weight greater than 15 pounds, perform volunteer work, exercise, or work at a computer for more than 10 minutes at a time. These assertions, combined with Merrihew's affirmation opining—based in part on his detection of muscle spasms and the X ray showing a straightening of plaintiff's spine—that these limitations are consistent with the injury he believes plaintiff suffered as a result of the accident, are sufficient to raise a question of fact as to whether plaintiff suffered a serious injury under the 90/180-day category (*see Martin v Fitzpatrick, supra* at 957; *Nichols v Turner*, 6 AD3d 1009, 1011-1012 [2004]).

Finally, we address plaintiffs' cross motion on the issue of liability. Viewing the evidence in the light most favorable to defendants, we find that partial summary judgment is appropriate. It is undisputed that plaintiff's vehicle was struck from behind while stopped and defendant subsequently pleaded guilty to driving while ability impaired, creating a prima facie case of negligence (*see Pampris v Egnasher*, 20 AD3d 746, 746 [2005]; *Nichols v Turner, supra* at 1012-1013). Defendants have not of-

fered any evidence of a cause for the accident other than defendant's negligence. Accordingly, plaintiffs are entitled to partial summary judgment on the issue of liability (*see Andre v Pomeroy*, 35 NY2d 361, 365 [1974]; *Pampris v Egnasher, supra* at 746-747).

Mercure, J.P., Crew III, Mugglin and Rose, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendants' motion for summary judgment dismissing the complaint alleging that plaintiff Mary Pugh suffered a serious injury in the 90/180-day category; motion denied to that extent and plaintiffs' cross motion for partial summary judgment on the issue of liability granted; and, as so modified, affirmed.