■ SPARKLING WATERS LAKEFRONT ASSOCIATION, INC., et al., Appellants, v ERNEST C. SHAW et al., Respondents. [841 NYS2d 146]—

Rose, J. Appeal from an order of the Supreme Court (Kavanagh, J.), entered May 3, 2006 in Ulster County, which granted defendants' motion for summary judgment dismissing the complaint.

Plaintiff Sparkling Waters Lakefront Association, Inc., owns the bed of Lake Sharon, a 10-acre man-made lake. The other parties to this action are individuals who own the land surrounding the lake. Plaintiffs' parcels were created by subdivision of a portion of the lakefront property of a common grantor, Gordon Peck, in 1965. Their deeds contain covenants permitting use of the lake and prohibiting further subdivision. In 1967, Peck conveyed other lakefront property to Lake Sharon Development Corporation (hereinafter LSDC), which conveyed it to Lake Illyria Corporation (hereinafter LIC) in 1971. The deed from LSDC to LIC contains covenants similar to those of plaintiffs' deeds, but with no prohibition against further subdivision. Later in 1971, LIC conveyed a portion of Peck's original lakefront property known as the "dam strip" to defendant Ernest C. Shaw, which had the effect of connecting his existing property to the lake. At other times prior to 1973, LIC conveyed other parcels with portions of the dam strip to the predecessors in title to all of the remaining defendants except defendants Malcolm S. Dorris and Virginia K. Dorris.

After these conveyances, the parties or their predecessors participated in a lakefront owners association and amicably made use of the lake until Shaw subdivided his portion of the dam strip and purportedly afforded defendant Charles B. Silver use of the lake in 1994. Plaintiffs then disputed the rights of both Shaw and Silver to use the lake by means of the dam strip. In November 2003, plaintiffs commenced this action seeking, among other things, to terminate the lake rights claimed by all defendants and set aside all prior conveyances of portions of the dam strip. Defendants answered and moved to dismiss the complaint as barred by laches. Supreme Court denied defendants' motion without prejudice to renewal. In 2006, defendants again moved for dismissal based on laches and plaintiffs cross-moved for summary judgment. Supreme Court granted defendants' motion, prompting this appeal by plaintiffs.[1]

Plaintiffs contend that the doctrine of laches should not have been applied because defendants failed to show that they were

1. Since plaintiffs current appeal brings up for review any prior nonfinal order (see CPLR 5501 [a]), we agree that they may raise issues addressed in

prejudiced by the delay in bringing suit and because defendants' use of the lake had been permissive. Plaintiffs also argue that Shaw cannot assert the defense because he has unclean hands. We are unpersuaded. "It is well settled that where neglect in promptly asserting a claim for relief causes prejudice to one's adversary, such neglect operates as a bar to a remedy and is a basis for asserting the defense of laches" (*Matter of Stockdale v Hughes*, 189 AD2d 1065, 1067 [1993] [citations omitted]; *see Matter of Schulz v State of New York*, 81 NY2d 336, 348 [1993]; *Dedeo v Petra Inv. Corp.*, 296 AD2d 737, 738 [2002]). To utilize the defense, defendants had to establish their lack of knowledge that plaintiffs would assert claims seeking to deny them use of the lake and an unconscionable delay on plaintiffs' part that induced defendants to act or refrain from acting in ways that would prejudice them if plaintiffs were now permitted to assert such claims (*see Turner v Caesar*, 291 AD2d 650, 652 [2002]).

In our view, the facts provide a compelling basis for application of the doctrine of laches here because the parties' dispute arises out of conveyances that were made and publicly recorded more than 30 years before the action was commenced (*see e.g. Delamater v Rybaltowski*, 161 AD2d 1001, 1002 [1990]). Although plaintiffs assert that defendants have no lake rights and that laches can create no new rights, we note that the covenants in LSDC's deed to LIC, as well as Peck's 1967 deed to the predecessors in interest to the Dorrises, provide that the grantees have the privilege of using the adjoining lake and, upon resale, the privilege shall pass to the purchasers. Also, the early deeds indicate that the dam strip was subdivided in 1971, 1972 and 1973. Thus, plaintiffs waited to assert their claims while defendants and their predecessors subdivided the dam strip and made use of the lake without objection at least until 1994, leading defendants to be unaware that plaintiffs might seek to terminate those rights.[2] In this regard, plaintiffs' allegation that defendants had previously used the lake with permission is conclusory, with no support in the documentary evidence (*see Led Duke v Sommer*, 205 AD2d 1009, 1011 [1994]).

Further, defendants have demonstrated prejudice. Prejudice may be established by a showing of change of position, loss of evidence or some other disadvantage resulting from the delay

Supreme Court's prior decision (*see e.g. Madden v Dake*, 30 AD3d 932, 935 n 2 [2006]).

2. While plaintiffs allege that they objected to subdivision of the dam strip in 1988, the only evidence of this is a memorandum from Adam Gillon to members of the lakefront owners' association in September 1988. The memorandum, however, does not question any past subdivision or exercise of lake rights.

(*see e.g. Matter of Vickery v Village of Saugerties*, 106 AD2d 721, 723 [1984], *affd* 64 NY2d 1161 [1985]; *Glenesk v Guidance Realty Corp.*, 36 AD2d 852, 853 [1971]). Here, plaintiffs rely on an affidavit of Robert Glad, who purports to know the intent of Peck, the parties' common grantor, to establish that the dam strip was not to be subdivided or used to access the lake. Because subdivisions of the dam strip occurred more than 30 years ago and Peck is now deceased, defendants would be at a disadvantage if they were required to litigate his original intent or the validity of the subdivisions.

Next, we are unpersuaded by plaintiffs' contention that Shaw has unclean hands precluding him from asserting laches as a defense. While plaintiffs allege that Shaw engaged in "illegal tacking" by purchasing the adjoining dam strip in order to obtain lake rights, there is nothing in the record suggesting that Shaw's actions were illegal, inequitable or barred by any covenant applicable to him. Thus, plaintiffs failed to show unclean hands (*cf. Matter of Uciechowski v Ehrlich*, 221 AD2d 866, 868 [1995]).

We do, however, find merit in plaintiffs' argument that laches should not be applied to their claim that they have an implied easement over the dam strip for purposes of maintaining the lake. Inasmuch as Supreme Court did not expressly consider this claim and there may be a basis for an easement by necessity under the facts alleged (*see Mobile Motivations, Inc. v Lenches*, 26 AD3d 568, 570 [2006]), the matter must be remitted for consideration of that claim.

Mercure, J.P., Spain, Mugglin and Kane, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendants' motion dismissing plaintiffs' claims regarding an implied easement; motion denied to that extent and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.