Peters, J.
Appeal from an order of the Supreme Court (Hard, J.), entered October 10, 2007 in Albany County, which granted defendant’s motion for summary judgment dismissing the complaint.
In October 2004, plaintiff’s vehicle, while stopped at an intersection, was struck from behind by a vehicle being driven by defendant. Following the accident, plaintiff claimed that he had significant pain and stiffness in his lower back, right hip and lower right extremities, as well as numbness in his right foot. He later commenced this action claiming serious injury within the meaning of Insurance Law § 5102 (d) as a result of the accident. Specifically, plaintiff asserted a “permanent loss of use” and a “permanent consequential limitation” of his back and lower extremities (Insurance Law § 5102 [d]). Following joinder of issue, defendant moved for summary judgment dismissing the complaint on the ground that plaintiff did not suffer a serious injury. Supreme Court granted defendant’s motion, prompting this appeal.
Defendant, who bore the initial burden of establishing that plaintiff did not suffer a causally-related serious injury (see Toure v Avis Rent A Car Sys., 98 NY2d 345, 352 [2002]; Felton v Kelly, 44 AD3d 1217, 1218 [2007]), proffered, among other things, the expert affidavit of Christopher Calder, a neurologist who performed an independent medical examination of plaintiff in January 2007. Calder opined that plaintiffs range of motion was either within normal limits or limited by subjective complaints of pain or stiffness and that there was no objective evidence that plaintiff suffered a serious or permanent injury to his back or lower extremities as a result of the accident. In so finding, Calder noted that plaintiff underwent cervical decompression surgery in 1993 and that a 2001 preaccident MRI revealed a central disc protrusion and severe spinal stenosis at L4-5. While noting that plaintiffs postaccident MRIs revealed a herniated disc at L4-5, Calder opined that plaintiffs documented history of “cervical stenosis and cervical myelopathy . . . three years before the subject accident [is] very similar” to that which *861 has been demonstrated after the subject accident and, further, that plaintiffs disc herniation could not be related to the accident because the MRI findings before and after the accident do not indicate any abnormalities that would suggest that the disc herniation was acute. Rather, Calder opined that the herniation occurred as a result of the natural and expected progression of plaintiffs preexisting spinal condition. We find this evidence sufficient to sustain defendant’s burden, thus placing the onus upon plaintiff to “set forth competent medical evidence based upon objective medical findings and tests to support his claim of serious injury and to connect the condition to the accident” (Blanchard v Wilcox, 283 AD2d 821, 822 [2001]; see Toure v Avis Rent A Car Sys., 98 NY2d at 350; Franchini v Palmieri, 307 AD2d 1056, 1057 [2003], affd 1 NY3d 536 [2003]).
To substantiate a claim under the permanent consequential limitation category,[1] “ ‘the medical evidence submitted by plaintiff must contain objective, quantitative evidence with respect to diminished range of motion or a qualitative assessment comparing plaintiffs present limitations to the normal function, purpose and use of the affected body organ, member, function or system’ ” (Pugh v DeSantis, 37 AD3d 1026, 1029 [2007], quoting John v Engel, 2 AD3d 1027, 1029 [2003]; see Saleh v Bryant, 49 AD3d 991, 992 [2008]). Additionally, “with persuasive evidence that plaintiffs alleged pain and injuries were related to a preexisting condition, plaintiff had the burden to come forward with evidence addressing defendant’s claimed lack of causation” (Pommells v Perez, 4 NY3d 566, 580 [2005]; see Coston v McGray, 49 AD3d 934, 935 [2008]).
In opposition to defendant’s motion, plaintiff relied upon the affirmations of Samuel Dulay, his treating physician, and Kevin Barron, a neurologist who performed an independent medical examination of plaintiff. Barron’s affirmation, however, merely incorporated a copy of his report which was based upon an examination of plaintiff that occurred almost two years prior to defendant’s summary judgment motion (see Chunn v Carman, 8 AD3d 745, 746 [2004]; Lisa v Pastor, 262 AD2d 368, 368 [1999]; Covington v Cinnirella, 146 AD2d 565, 566 [1989]). Indeed, Barron noted in his affirmation that plaintiff’s condition was improving and, moreover, both the medical records following Barron’s report and plaintiffs October 2006 examination before trial testimony reveal that his complaints with respect to his right hip, knee and thigh have either improved or have gone away. Further, although Barron opined that plaintiff had a *862 herniated disc at L4-5 which “appears” to be related to the accident and that his underlying lumbar stenosis was permanently aggravated thereby, leading to plaintiff’s current lower limb pain and diminished mobility, Barron failed to adequately quantify plaintiff’s current limitations, contrast those limitations to the normal function, purpose and use of the affected body organ, function or system, or demonstrate that his findings were based on anything other than plaintiff’s subjective complaints (see Pianka v Pereira, 24 AD3d 1084, 1086 [2005]; Gonzalez v Green, 24 AD3d 939, 940-941 [2005]; Serrano v Canton, 299 AD2d 703, 704 [2002]).
We also find that Dulay’s affirmation was insufficient to raise a question of fact as to whether plaintiff suffered a serious injury under this category, as he failed to set forth any objective medical basis for his opinion that the accident exacerbated plaintiffs prior spinal condition. Dulay diagnosed plaintiff as suffering from cervical myelopathy with radiculopathy, which preexisted the accident but was permanently aggravated thereby, resulting in a permanent consequential limitation with respect to movement in plaintiffs foot, balance, feeling in his right leg, and urinary function. Notably, however, Dulay failed to set forth any diagnostic tests or other objective medical evidence for his findings in this respect, instead merely noting that plaintiff was “reporting and exhibiting classic symptoms” of this condition, which inescapably “lead[s] to the conclusion that these findings were based on plaintiffs subjective complaints” (John v Engel, 2 AD3d at 1029; see Pianka v Pereira, 24 AD3d at 1086). Further, although Dulay opined that plaintiff’s “foot drop” and spastic gait were objective symptoms of plaintiff’s condition, such conditions do not constitute objective evidence of causation inasmuch as plaintiffs medical records clearly reveal that he experienced these problems to some degree prior to the accident, and Dulay failed to provide a sufficient quantitative or qualitative assessment of plaintiffs limitations prior to the accident by which the claimed aggravation can be measured (see Pinkowski v All-States Sawing & Trenching, 1 AD3d 874, 875 [2003]; Hines v Capital Dist. Transp. Auth., 280 AD2d 768, 770 [2001]; see also Franchini v Palmieri, 1 NY3d 536, 537 [2003]). Lastly, to the extent that plaintiff claims that his urinary problems constitute objective evidence of exacerbation since the record reveals that these problems occurred only after the subject accident, we need only note that Dulay, a general practitioner, merely commented that urinary urgency “is very common with people who have injuries to the spinal cord and its function.” Dulay did not specify any objective medical evidence to relate plaintiffs alleged urinary problems to the accident or to demonstrate that *863 this condition is permanent, nor did he exclude any other possible causes for this condition.[2] For all of these reasons, plaintiff has failed to raise an issue of fact sufficient to withstand summary judgment.
Cardona, EJ., Mercure, Carpinello and Kavanagh, JJ., concur. Ordered that the order is affirmed, with costs.

. Plaintiff conceded at oral argument that there was no proof that he suffered a serious injury under the permanent loss of use category.

. Indeed, plaintiff admittedly did not visit a urologist for Ms alleged urinary problems and ceased taking medication that “worked” in treating this condition.